Clayton PALMER, Petitioner–Appellant,

v.

Richard L. DUGGER, Robert A. Butterworth, Attorney General, Respondents–Appellees.

No. 86–5394.

United States Court of Appeals, Eleventh Circuit.

Dec. 1, 1987.

Theodore J. Sakowitz, Federal Public Defender, Lisa A. Rosenthal, Asst. Federal Public Defender, Miami, Fla., for petitioner-appellant.

Robert L. Teitler, Dept. of Legal Affairs, Deborah Guller, Asst. Atty. Gen., West Palm Beach, Fla., for respondents-appellees.

Before JOHNSON and
EDMONDSON, Circuit Judges, and
HOFFMAN *, Senior District Judge.

JOHNSON, Circuit Judge:

In this habeas corpus proceeding, the United States District Court for the Southern District of Florida determined that Clayton Palmer was not entitled to credit for time served in Georgia and South Carolina prior to Palmer's extradition to Florida. Consequently, the district court denied Palmer's petition. We affirm in part and reverse in part.

### I.

On March 28, 1982, Palmer was arrested in Georgia on fugitive arrest warrants stemming from a criminal information filed against him in Florida. He was held without bail in Georgia on these warrants for 148 days. On August 23, 1982, Palmer waived extradition to South Carolina to answer charges alleging South Carolina probation violations. On September 12, 1982, he was found not guilty of violating the terms of his probation. Palmer was arrested the next day and detained further in South Carolina solely on the basis of a Florida fugitive warrant. Initially no bail was set while Palmer awaited extradition. On October 7, 1982, bail was set at $40,000. He was extradited to Florida on December 21, 1982, to face trial on the Florida charges.

Palmer was subsequently convicted by a Florida jury of sexual battery with slight force and false imprisonment, receiving the statutory maximum sentences of 15 and 5 years respectively. *See* Fla.Stat. §§ 775.-082(3)(c)–(d), 787.02, 794.011(5). The state sentencing judge gave Palmer credit against his sentence for his time served in the Florida jail between his extradition on December 21, 1982, and his sentencing on October 19, 1983, a total of 303 days. Based upon the Florida Supreme Court's decision in *Kronz v. State*, 462 So.2d 450 (Fla.1985), however, the judge refused to award him credit for the 268 days of jail time served in Georgia and South Carolina while awaiting extradition to Florida.

After exhausting his state habeas corpus remedies, Palmer filed his petition for a writ of habeas corpus in the district court. The district court denied the petition and Palmer filed this timely appeal.

### II.

As a general rule, a state prisoner has no federal constitutional right to credit for time served prior to sentence absent a state statute granting such credit. *Jackson v. Alabama*, 530 F.2d 1231, 1235 (5th Cir.1976); *Gremillion v. Henderson*, 425 F.2d 1293, 1294 (5th Cir.1970). But "[a]n exception to the general rule may be claimed by a criminal defendant who is confined before sentencing because his indigency prevents him from making bond. Because of the Fourteenth Amendment guarantees against wealth discrimination, such a defendant is entitled to credit if he is sentenced to the statutory maximum term for his particular offense." *Martin*

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

*v. Florida*, 533 F.2d 270, 271 (5th Cir.1976) (per curiam); *accord Crowden v. Bowen*, 734 F.2d 641, 642 (11th Cir.1984) (per curiam) ("The equal protection clause does not allow a state to extend a prisoner's sentence beyond the maximum period prescribed by law by refusing to give the prisoner credit for presentencing detention occasioned by the prisoner's financial inability to make bail.").

 Thus, under the current law of this Circuit, a prisoner is entitled to credit for presentencing incarceration if three conditions are present: (1) the prisoner is held for a bailable offense; (2) the prisoner is unable to make bail because of indigence; and (3) upon conviction the prisoner is sentenced to the statutory maximum sentence for that offense.

### A. *The Georgia Time*

 The district court denied Palmer credit for the 148 days he was detained in Georgia because, according to Palmer's own admission, he was held without bail. We agree with the district court's analysis on this issue. Palmer was unable to make bail not because of his indigence, but because no bail was set. Consequently, Palmer's indigence was irrelevant and he is not entitled to credit against his sentence for that pretrial jail time. *Cf. Martin*, 533 F.2d at 271–72 (prisoner not entitled to pretrial detention credit where confinement was not because of poverty but because bail was revoked).

### B. *The South Carolina Time*

 Palmer waived extradition to South Carolina to answer probation violation charges in that state. The district court reasoned that, because the South Carolina charges were factually and legally distinct from the Florida charges, Palmer's detention in South Carolina did not constitute preconviction custody for the Florida offenses. We affirm in part and reverse in part.

### 1. *Time Spent for South Carolina Charges*

On August 23, 1982, Palmer waived extradition to answer charges alleging South Carolina probation violations. On September 12, 1982, Palmer was found not guilty of violating the terms of his probation. The district court properly concluded that Palmer is not entitled to credit against his sentence for that pretrial jail time. Palmer was not convicted of the offense for which the time was attributable.

### 2. *Time Spent for Florida Charges Before South Carolina Set Bail*

 On September 13, 1982, Palmer was arrested and detained further in South Carolina solely on the basis of the Florida fugitive warrant. Initially no bail was set while Palmer awaited extradition. On October 7, 1982, bail was set. For the reasons set forth above in Section II(A) of this opinion, Palmer is not entitled to credit against his sentence for the pretrial jail time between September 13 and October 6 inclusive.

### 3. *Time Spent for Florida Charges After South Carolina Set Bail*

After bail was set on October 7, Palmer was unable to post it because of his indigence. On December 21, 1982, after lengthy extradition proceedings, Palmer was turned over to Florida authorities. The district court concluded that Palmer was not entitled to credit against his sentence for the pretrial jail time between October 7 and December 21 inclusive. We reverse.

 We have not discovered, and the parties have not shown us, any case dealing with the precise issue raised by Palmer's appeal. Specifically, does the Fourteenth Amendment require that credit be granted for presentencing incarceration in another jurisdiction where the criminal defendant has been given the statutory maximum sentence and could not, because of his indigence, make bail pending extradition? [1]

---

**1.** One court has implicitly addressed the question. In *Faye v. Gray*, 541 F.2d 665 (7th Cir.

1976), the petitioner, whose indigence prevented him from posting bail, argued that, pursuant to

This Circuit has recently followed and expanded the general rule stated in *Jackson* that a defendant who is unable to post bond because of his indigence and who is given the statutory maximum sentence for his offense is entitled to credit for time spent in jail prior to sentencing. In *Crowden v. Bowen, supra,* 734 F.2d 641, we held that a defendant in such circumstances is also entitled to credit for time spent in postconviction custody pending appeal. We perceived "no distinction in principle between a denial of credit for time spent in presentencing custody that results in the detention of indigents longer than the maximum period which can be imposed by law and a similar denial when the detention occurs after sentencing, pending appeal." *Id.* at 642. Similarly, we perceive no distinction in principle between the presentencing incarceration of an indigent criminal defendant in the state where he will be tried and his presentencing detention in another state while awaiting extradition.

Dugger argues that the question of whether Palmer receives credit for this time is a matter of Florida law. Dugger contends that *Kronz, supra,* 462 So.2d 450, governs Palmer's request for time credit and consequently that Palmer is not entitled to such credit.

In *Kronz,* the Florida Supreme Court examined the state statute providing that "the court imposing a sentence shall allow a defendant credit for all the time spent in the county jail before sentence." Fla.Stat. § 921.161(1). Kronz was arrested and held in South Carolina on a fugitive warrant for an escape from a Florida jail. He unsuccessfully fought extradition and eventually pleaded guilty to the escape charge. Kronz sought credit for time served in South Carolina. The Florida Supreme Court concluded that Section 921.161(1) "requires the trial judge to give credit only for time served in Florida county jails pending disposition of criminal charges. The trial judge does, however, have the inher-

ent discretionary authority to award credit for time served in other jurisdictions while awaiting transfer to Florida." 462 So.2d at 451.

Dugger's argument addresses the issue of whether a state, as an act of legislative grace, has provided for time credit. That is *not* the issue in the present case—the issue is whether not giving credit violates the Fourteenth Amendment. Thus, Dugger's reliance on *Kronz* is misplaced; *Kronz* plays no part in answering the *constitutional* question presented by this case. As noted above, the general rule that time credit requires state statutory support gives way, as required by the equal protection clause, when the defendant receives the statutory maximum and cannot meet bail because of indigence. As the Supreme Court recognized in *Williams v. Illinois,* 399 U.S. 235, 241–42, 90 S.Ct. 2018, 2022–23, 26 L.Ed.2d 586 (1970), the general rule gives way because Fourteenth Amendment protections are triggered and the state has no countervailing interest: "[O]nce the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigence."

■ Similarly, we reject the notion that our holding infringes Florida's sovereignty by giving credit for jail time imposed by another state when that state set the bail pending extradition. South Carolina itself did not impose the jail time; rather, it imposed the jail time because *Florida* had requested South Carolina to hold Palmer. In addition, no infringement has occurred. *Williams* recognizes that a state has a right to set maximum sentences to achieve penological interests. But the Supreme Court went on to hold that this state interest is not infringed when a state seeks to impose a penalty upon a defendant that

---

the equal protection clause, he should receive credit for his presentence confinement. He sought credit for time spent in a Nebraska jail while awaiting extradition to Wisconsin and for time spent in a Wisconsin jail prior to his con-

viction. In concluding that the sentencing judge had not credited the presentence confinement, the court made no distinction between the time spent in Nebraska awaiting extradition and the time spent in Wisconsin.

exceeds the state-created statutory maximum and that penalty results from the defendant's indigence. Lastly, the fact that South Carolina set bail pending extradition is irrelevant; the offenses included in the Florida fugitive warrant were bailable offenses in Florida, *see* Fla. Const. art. 1, § 14, and the warrant itself contemplated that bail would be set.

 Finally, we reject the notion that Palmer could have avoided the South Carolina jail time by waiving his right to contest extradition. We hold *Crowden* controlling on this point. In that case,

> [u]nder Alabama law a criminal defendant who appeals his conviction has the option of being transferred to the penitentiary pending appeal of having his sentence suspended and either going free on bail, if eligible and financially able, or remaining in county jail. A person taking the former route receives credit on his sentence for this detention, while one pursuing the latter course does not.... [T]he state argues that only by petitioner's voluntary act of sitting out the appeal in county jail rather than state prison was he denied postsentencing credit. What is at issue here, however, is not whether petitioner unilaterally chose to be detained in county jail once his inability to post bond mandated his continued incarceration pending appeal, but whether he may be detained at all without credit while wealthier defendants go free on bail, with the result that petitioner and other indigents serve terms beyond the statutory maximum. We hold that he may not.

734 F.2d at 643. Similarly, we hold that Palmer need not have waived his right to contest extradition in order to receive credit against his sentence.

AFFIRMED in part, REVERSED in part.

EDMONDSON, Circuit Judge, dissenting:

I think that a state's duty, pursuant to the federal constitution's equal protection clause,[1] to treat its prisoners uniformly concerning their periods of incarceration is limited to incarcerations during which the prisoner is subject to the authority of that same state. To me, the key concept in this case is federalism, by which I mean, among other things, the separation of powers and of obligations among the various states in respect to their own territories.

This seems to be a case of first impression in the federal appellate courts. None of the cases relied upon by today's court is materially similar to this case. A reading of the cases cited in the court's opinion reveals that those cases all involve a defendant within the jurisdiction of a state awarded credit for time served—either pretrial or post-sentence pending appeal—in the jails of that same state. I do not disagree with those cases, but I believe the case before us now is significantly different. Petitioner Palmer requests credit for time spent in the jails of a jurisdiction *other* than the one whose laws he violated. That fact, implicating the relations of states and the principles of federalism, prohibits a simple extension of *Jackson v. Alabama*, 530 F.2d 1231 (5th Cir.1976), and its progeny.

There is an important distinction in principle and in practice between the individual incarcerated in the state whose laws he is accused of violating and the individual in custody elsewhere awaiting extradition. The defendant incarcerated in the state where he will be tried, or where he has been tried and is awaiting appeal, is in the power of the sovereign that seeks to exact punishment for the infringement of its laws. It is this sovereign state, through its legislature, that has formulated the criminal laws and procedures to which the individual is subject. It is this sovereign state, through its judiciary, that has decided whether or not to set bail; decided how much bail to set, when it is granted; and decided when the accused will be tried or when his appeal will be heard. If the state

---

1. "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, sec. 1.

itself subjects a defendant to a loss of liberty during delays, the state may choose, again through its legislature, to compensate the individual through credit for time served in its jails.[2]

The situation of the individual fighting extradition is very different. There are, therefore, good reasons for different treatment by the convicting state. First, he is not in the power of the state seeking ultimately to punish his transgression of its laws, but rather, under the dominion of another sovereign state. This is of paramount importance. Furthermore, he is present in that other state and absent from the state demanding his return not through any action of the demanding state but by his own volition. Second, it is this asylum state, not the demanding state, that will decide whether and how much bail to set pending settlement of the extradition question. Third, if the individual is obliged to remain in custody, the conditions of his incarceration in the asylum state may be very different from the conditions of imprisonment imposed in the demanding state.[3] For these reasons, any requirement that the demanding state credit defendant with time served in the asylum state is an infringement on the demanding state's sovereignty. The demanding state lacks that degree of control necessary to trigger an equal protection duty concerning this incarceration. *See Johnson v. Manson,* 196 Conn. 309, 493 A.2d 846 (1985) (demanding state does not violate equal protection by denying jail time credit for time defendant spent in asylum state's jails contesting extradition), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 813, 88 L.Ed.2d 787, *reh. denied,* 475 U.S. 1061, 106 S.Ct. 1290, 89 L.Ed.2d 597 (1986).

Furthermore, such a requirement would allow the individual to choose where and how he wished to be incarcerated. If one state structures its penal system to meet the bare essentials of federal constitutional rights, an individual should not be able to have the time spent in the jails of a more generously inclined state count towards the punishment exacted by the first state. To permit this is to infringe upon each state's right to structure its penal system as it sees fit and the state's right to impose the type of punishment or treatment (or both) it has decided is merited for the crime committed. *See Brinkman v. Schubert,* 422 F.Supp. 820, 831–32 (W.D.Wis.1976); *Jackson,* 530 F.2d at 1237 n. 8. Incidentally, such an allowance could also encourage fugitives from justice apprehended in other

---

**2.** As the majority notes, there is no general absolute federal constitutional right to credit on sentence for prejudgment detention in all circumstances. *Jackson v. Alabama,* 530 F.2d at 1235 (quoting *Gremillion v. Henderson,* 425 F.2d 1293, 1294 (5th Cir.1970)); *Cobb v. Bailey,* 469 F.2d 1068, 1070 (5th Cir.1972). Florida did, however, decide to permit jail time credit as a matter of legislative grace. Section 921.161(1) of the Florida Statutes provides a defendant with credit for all pretrial time spent in the county jail. The Florida Supreme Court later construed that statute to mean that while the sentencing judge must allow credit for time spent in Florida county jails, it falls within the judge's discretion whether or not to allow a defendant credit for time spent in the jails of other jurisdictions awaiting transfer to Florida. *Kronz v. Florida,* 462 So.2d 450 (Fla.1985).

**3.** Even inside a single state, the state can properly take into account the place of a prisoner's incarceration and the state's particular penological goals when granting certain types of time credit to the prisoner. In *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the Court found no violation of equal protection by New York's law which allowed good time credit toward parole eligibility for time spent in state prisons, but not for time spent in county facilities. This meant that the individual unable to make bail who spent four months in a county facility awaiting trial would receive jail time credit for those months, but would not amass good time credit during that period. Thus, the indigent individual sentenced to one year in prison would spend eight months in state prison, beyond his four-month pretrial incarceration, but could receive good time credit only for those eight months in state custody. The individual receiving the same sentence but who was able to post bond while awaiting trial would spend twelve months in state custody and could receive twelve months worth of good time credit: his sentence would thus be shorter than that of the indigent defendant. Despite this result, the Court found no constitutional violation because there existed a rational basis for the state's calculation of good time credit. State facilities offered rehabilitation programs, county facilities did not; the good time credit law rewarded a prisoner's progress toward rehabilitation, and thus the state's distinction between time in state and county jails was valid.

states to fight extradition, not because they believe they have a meritorious case, but simply because they wish to accrue jail time credit in more comfortable or convenient surroundings or to remain where they are for other reasons while still gaining jail time credit.

In equating petitioner Palmer with those defendants who find themselves in the jails of the convicting state, today's court argues that because South Carolina held Palmer in custody for purposes of extradition at the behest of Florida, Florida cannot properly contend that it had no hand in this incarceration. This reasoning ignores the fact that South Carolina was acting as much for defendant Palmer as for the requesting state, Florida. If Florida had requested that South Carolina return Palmer for purposes of prosecution, Palmer, too, had made a request of South Carolina: that he not be extradited to face prosecution. That South Carolina, through its executive and judicial branches, acted as arbitrator of these claims does not transform its actions into those of Florida and does not signify that South Carolina was acting for Florida anymore than a tribunal acts for one or the other of two litigants before it. This rationale, then, does not serve to oblige Florida to adopt the actions of the asylum state and to allow credit for time served in another state.

It may be argued that the refusal to grant time credit may coerce a defendant to abandon any challenge to extradition, so that this refusal impermissibly burdens the right of opposing extradition.[4] In response, I would only note that there are few, if any, "absolute rights." The first amendment, for example, guarantees us all that Congress shall not "abridg[e our] free-dom of speech;" by incorporating that right as regards the states, the fourteenth amendment guarantees that state governments also shall not constrain speech. Still, the public employee cannot exercise his free speech rights to the same extent as one not employed by the government and may, in fact, be discharged from his employment for speaking out. *See Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968); *Berry v. Bailey*, 726 F.2d 670 (11th Cir.1984), cert. denied, 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985); 5 U.S.C.A. secs. 7324 and 7325 (known as the Hatch Act, stating in pertinent part, "An employee in an Executive agency or an individual employed by the government of the District of Columbia may not ... take an active part in political management or in political campaigns," under penalty of discharge); *McAuliffe v. Mayor of New Bedford*, 155 Mass. 216, 220, 29 N.E. 517, 517–18 (1892). Other rights are also limited. Municipal employees may, for example, properly be required to live within the city's boundaries as a condition of their employment. *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 646 n. 6, 96 S.Ct. 1154, 1155 n. 6, 47 L.Ed.2d 366 (1976); *Lorenz v. Logue*, 611 F.2d 421 (2d Cir. 1979); *Andre v. Board of Trustees*, 561 F.2d 48 (7th Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978).

Almost all serious decisions that adults make involve weighing the bad as well as the good consequences of each possible alternative. This is why decisionmaking is frequently so difficult: there is usually no

---

**4.** For background, see *Roberts v. Reilly,* 116 U.S. 80, 90, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885) (individuals have a federal right to challenge extradition through a habeas corpus proceeding; prisoners held for extradition are held pursuant to United States law); *Crumley v. Snead,* 620 F.2d 481, 485 (5th Cir.1980); *Payne v. Burns,* 707 F.2d 1302 (11th Cir.1983). After the governor of the asylum state signs the extradition warrant, the prisoner may bring a habeas action to challenge the validity of the asylum state's custody. This is an action between the prisoner and the asylum state custodians, to which the demanding state apparently need not be a party.

No one contends that Palmer was denied the right to resist extradition. The issue here is whether the federal Constitution actually requires that Palmer be allowed to invoke the asylum state's (South Carolina's) law to fight extradition, avoiding Florida's control for months, and still be able to compel Florida to give him jail time credit for those very same months just as if he had been under Florida's control in a Florida jail at the time.

totally good alternative. This is the nature of life; and, of course, the federal constitution does not outlaw all difficult choices. There are thus costs to the exercise of many, if not all, rights. When the issue of an accused's mental competence is raised and an accused spends time undergoing tests in a mental hospital before trial, he will not necessarily receive time credit against an eventual sentence for the time spent in the mental hospital. *See Makal v. Arizona,* 544 F.2d 1030 (9th Cir.1976), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). Such is the cost of ensuring that a defendant is able to participate and protect his own interests at trial. A defendant who successfully challenges his conviction may be retried and, at retrial, may be reconvicted and receive a heavier sentence than was originally imposed. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Such is the risk inherent in challenging the validity of the original criminal trial.

In the present situation, there is also a cost to fighting extradition and resisting entry into the power of the demanding state: the defendant may be obliged to spend time in the jails of the asylum state while that state decides the extradition matter. This is not punishment for a crime. The individual who successfully challenges extradition will go on his way; the unsuccessful individual will be returned to the demanding state. The time spent in the jails of the asylum state relates, not to the crime for which the demanding state was seeking the defendant, but *to the process of extradition itself:* for both the successful and unsuccessful, the time in custody is a cost of opposing extradition, indeed, a method by which the individual sought backs the validity of his claim, if necessary. A successful individual who was incarcerated pending the extradition decision receives no compensation for that time from either the asylum or the demand-

ing state. By the same token, the unsuccessful individual who has gambled and lost cannot properly demand time credit toward his sentence for time spent in jail in another state relating to a matter tangential to the crime for which he is to be punished. *See United States v. Mitchell,* 556 F.2d 371, 382 (6th Cir.) (defendant's imprisonment of twenty-three months on civil contempt charge for refusal to give voice exemplar to grand jury was not to be credited toward defendant's sentence in connection with conspiracy charge of which he was ultimately convicted; "the confinement was imposed in connection with the civil contempt and not in connection with the criminal offense of conspiracy"), *cert. denied,* 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed. 2d 284 (1977).

In the present case, petitioner Palmer spent some four months in South Carolina jails not because Florida sought him as a fugitive from justice, but because he chose to oppose his extradition to Florida.[5] In this way, even though he was apparently too poor to post bail in South Carolina, Palmer himself held the keys to his South Carolina prison cell. When he finally came under Florida's authority, he was not treated differently by Florida because of his lack of wealth; he was denied South Carolina jail time credit because—as he had chosen—he was not under Florida's control during the pertinent time. Palmer was not constrained to a single course of action. Instead, he had a choice: he could fight extradition and, as a cost of that fight, risk spending time in South Carolina prisons for which he would receive no jail time credit or he could return to Florida and begin amassing jail time credit prior to his trial. *See generally Lowrie v. Goldenhersh,* 716 F.2d 401 (7th Cir.1983) (Illinois Supreme court rule that admitted foreign-licensed attorneys to Illinois bar if they had practiced in their licensing state for at least

---

**5.** In situations where an individual is held in state custody and sought also on a federal charge, "credit for state incarceration is given pursuant to 18 U.S.C. sec. 3568 only when [state incarceration] 'was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical

equivalent of a federal one.'" *United States v. Dovalina,* 711 F.2d 737, 740 (5th Cir.1983) (*quoting Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir.1971)). In the instant case, detention in South Carolina was not due solely to the charge pending against Palmer in Florida; it was due to his opposition to extradition.

five consecutive years of prior seven years did not infringe upon the right to travel; foreign-licensed attorney could either meet the requirement or take the Illinois bar exam); *Verner v. Colorado,* 533 F.Supp. 1109, 1118–19 (D.Colo.1982) (Colorado rule that all attorneys and judges pursue continuing legal education did not constitute involuntary servitude; individuals could choose a) to attend class or b) not to attend and to forego the practice of law), *aff'd,* 716 F.2d 1352 (10th Cir.1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2175, 80 L.Ed.2d 558 (1984); *Flood v. Kuhn,* 443 F.2d 264, 268 (2d Cir.1971) (no claim of involuntary servitude lies because of baseball's reserve system, obliging player to negotiate with first team that reserves player: player can abide by the rule or decide not to play), *aff'd,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed. 2d 728 (1972).

Consequently, I believe that the decision of whether or not to allow jail time credit for jail time served in other jurisdictions is a matter of state sovereignty that is properly left for decision to the state, itself. Florida certainly has the obligation to give persons within its jurisdiction the equal protection of the laws. But Palmer chose to stay within the jurisdiction of South Carolina and outside of Florida's jurisdiction for months. His incarceration during that time triggers no equal protection duties on Florida's part. The question of equal protection does not arise until individuals find themselves within the control of the state that is to be charged with the duty of equal protection. Thus, Florida can have a valid practice of allowing prisoners in Florida no jail time credit for incarceration outside of Florida's control.

The words "within its jurisdiction" in the equal protection clause recognize the limit of state powers and, as a corollary, the limit of state duties in our federal system. The court's decision in this case overlooks the differences between a federal and a national system of government; its balance of the defendant's rights and the demanding state's rights is thus, to my view, improperly skewed. Its balancing gives no weight to the right of each state to control the nature of the punishment for violation of its laws and no weight to the fact that prisoners fighting extradition are not then within the power of the demanding state.

"[O]nce the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." *Williams v. Illinois,* 399 U.S. 235, 241–42, 90 S.Ct. 2018, 2022, 26 L.Ed.2d 586 (1970). This worthy principle has no application in petitioner Palmer's case. The time Palmer spent incarcerated in South Carolina was not time that Florida imposed on Palmer in excess of the maximum sentence for his crime: it was time required by South Carolina pending extradition and served in South Carolina jails because Palmer did not wish to return to Florida. Florida has subjected Palmer *only* to the maximum sentence it has imposed for his crime. It should not be obliged to give petitioner credit for time imposed by another state.

Accordingly, I respectfully dissent.