Hillsborough-northern judicial district
Nos. 95-796
    95-811

THE STATE OF NEW HAMPSHIRE

v.

ERIC HARNUM

July 18, 1997

*Jeffrey R. Howard*, attorney general (*Malinda R. Lawrence*, attorney, on the brief and orally), for the State.

*Joachim Barth*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Eric Harnum, appeals the Superior Court's (*Barry*, J.) denial of his request for pretrial confinement credit for the time he spent incarcerated in Florida contesting extradition. We affirm.

As a consequence of a series of probation violation reports and the defendant's indictment for selling cocaine to an undercover Manchester police officer, *see* RSA 318-B:2, I (1995), the defendant

was sought by law enforcement authorities. In January 1995, the defendant was arrested in Florida as a fugitive from justice, and New Hampshire sought to extradite him. The defendant was returned to New Hampshire in May 1995, the delay resulting from the defendant contesting extradition.

In early September 1995, the superior court held a probation violation hearing and found the defendant chargeable for failing to report, using drugs, and failing to notify his probation officer concerning an arrest. Later that month, a jury found the defendant guilty of selling cocaine. At a sentencing hearing in October 1995, the court imposed a two to four year sentence for the probation violation, and a consecutive two to four year sentence for the narcotics conviction. The latter sentence was suspended, conditioned upon good behavior and compliance with certain sentencing orders. The court granted the defendant one hundred and sixty-eight days of pretrial confinement credit against the term of his probation violation for the time the defendant served after his return to New Hampshire.

■ The sole issue on appeal is whether the defendant is entitled to additional pretrial credit pursuant to RSA 651:3, I (1996) and RSA 651-A:23 (1996). Although the defendant's brief marginally invokes a constitutional claim, the defendant failed to adequately apprise the trial court of his claim. Accordingly, we consider it waived. *See State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 555 (1996). Nevertheless, we note that there is generally no federal constitutional right to pretrial credit. *See Palmer v. Dugger*, 833 F.2d 253, 254 (11th Cir. 1987).

The defendant argues that the trial court erred by failing to credit his sentence with the time he served in Florida while contesting extradition to New Hampshire. He asserts that under RSA 651:3, I, and RSA 651-A:23, all time served, regardless of jurisdiction, must be credited to the sentence imposed. The State counters by arguing that statutory pretrial confinement credit only applies when a defendant is actually under the control of New Hampshire authorities. The State further argues that the statutory credit is inapplicable because the defendant was not awaiting trial, but was instead awaiting extradition. *See* RSA 651-A:23. Finally, the State contends that when a defendant is incarcerated as a fugitive from justice, the basic principles underlying pretrial confinement credit do not apply. *See State v. Decker*, 127 N.H. 468, 470, 503 A.2d 796, 797 (1985).

RSA 651:3, I, instructs that "[a]ll time actually spent in custody prior to the time [the defendant] is sentenced shall be credited

[against the defendant's sentence] in the manner set forth in RSA 651-A:23." RSA 651-A:23, in turn, provides:

> Any prisoner who is confined to the state prison, any house of correction, any jail or any other place shall be granted credit against both the maximum and minimum terms of his sentence equal to the number of days during which the prisoner was confined in jail awaiting and during trial prior to the imposition of sentence and not under any sentence of confinement.

■ As in all cases involving statutory interpretation, the starting point is the language of each statute. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980). We construe each statute as a whole, *Dionne v. City of Manchester*, 134 N.H. 225, 228, 589 A.2d 1016, 1018 (1991), and if the statute's language is clear and unambiguous, we do not look beyond the language of the statute to discern legislative intent, *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980). Accordingly, "[w]e interpret legislative intent from the statute as written, and therefore, will not consider what the legislature might have said or add words that the legislature did not include." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

■ RSA 651-A:23 clearly and unambiguously mandates that defendants shall receive pretrial sentencing credit for time spent incarcerated while "awaiting and during trial." The defendant has pointed to nothing that demonstrates that the legislature intended to extend pretrial confinement credit to fugitives from New Hampshire justice who are awaiting extradition in another State. The defendant essentially requests that we modify RSA 651-A:23 by adding the words "while awaiting extradition." This we cannot do, because the meaning of statutory language that is clear and unambiguous "is not subject to modification by judicial construction." *State v. Melcher*, 140 N.H. 823, 826, 678 A.2d 146, 148 (1996) (quotation omitted); *see also Johnson v. Mason*, 493 A.2d 846, 850 (Conn. 1985) (concluding statute clearly specifies that credit is available for time spent "while awaiting trial" and contains no language regarding credit for time spent "while awaiting extradition"), *cert. denied*, 474 U.S. 1063 (1986); *Commonwealth v. Beauchamp*, 595 N.E.2d 307, 309 & n.3 (Mass. 1992) (in the context of an escapee's case, court stated that no Massachusetts statute affords defendant credit for time spent fighting rendition despite statute that accords credit for time spent incarcerated while awaiting trial).

■ The defendant's argument also fails because he was not "in custody" for purposes of New Hampshire law while he was under the control of Florida authorities. *Cf. Johnson*, 493 A.2d at 852 ("petitioner was not within the jurisdiction of Connecticut when confined in Florida awaiting extradition"). The laws of New Hampshire had no binding effect on the defendant until he was made available to the officers of this State. *Cf. id.* at 852-53 (Connecticut legislature cannot bind Florida authorities or petitioner while in Florida). As used in RSA 651:3, the term "custody" necessarily presupposes a form of custody over which New Hampshire can exercise its control. New Hampshire authorities control prisoners incarcerated in New Hampshire, as well as those incarcerated outside New Hampshire pursuant to the New England Interstate Corrections Compact, *see* RSA ch. 622-A (1986), or the National Interstate Corrections Compact, *see* RSA ch. 622-B (1986), but not prisoners wanted by New Hampshire authorities who are confined in Florida awaiting extradition.

Accordingly, the defendant is not entitled to credit for time spent incarcerated in Florida while he awaited extradition. *See Kronz v. State*, 462 So. 2d 450, 451 (Fla. 1985). For us to hold otherwise would allow the defendant to select the State where he would serve a portion of his sentence. *See Beauchamp*, 595 N.E.2d at 310.

*Affirmed.*

BRODERICK, J., with whom HORTON, J., joined, dissented; the others concurred.

BRODERICK, J., dissenting: Because I believe that the trial court erred by failing to credit the defendant's sentence with the time he was incarcerated in Florida while contesting extradition to New Hampshire, I respectfully dissent.

When this court interprets a statute, "we examine the statutory language itself and construe the law consistently with its plain meaning." *Penrich, Inc. v. Sullivan*, 140 N.H. 583, 589, 669 A.2d 1363, 1367 (1995). Under the language of the statute, the defendant is entitled to credit for "[a]ll the time actually spent in custody," RSA 651:3 (1996), in "the state prison, any house of correction, any jail or any other place." RSA 651-A:23 (1996). The statute makes no distinction between out-of-state and in-state custody, and I see no reason to change the plain meaning of RSA 651:3 by reading into it an exception for the time a prisoner has spent in the custody of another State pursuant to an arrest for a New Hampshire offense. *Accord State v. Mahler*, 626 P.2d 593, 594 (Ariz. 1981); *State v.*

*Mattson*, 376 N.W.2d 413, 416 (Minn. 1985); *State v. Brown*, 780 P.2d 880, 890 (Wash. Ct. App. 1989), *review denied*, 791 P.2d 897 (Wash. 1990). "When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by judicial construction." *State v. Flynn*, 123 N.H. 457, 462, 464 A.2d 268, 271 (1983). As we have often said, "legislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say." *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (quotation omitted). If the legislature had intended to limit pretrial credit to time served in a New Hampshire jail or facility, it could have said so explicitly.

The State argues, and the majority agrees, that the defendant was not under the control of New Hampshire authorities while he was incarcerated in Florida, and, therefore, he was not "in custody" under RSA 651:3. The New Hampshire charges, however, were the sole reason for the defendant's incarceration in Florida. *See Birden v. Dept. of Correctional Serv.*, 521 N.Y.S.2d 909, 910 (App. Div. 1987) (defendant entitled to credit when incarceration in New Jersey was "solely by reason of the New York detainer"). The time the defendant served in Florida was attributable *solely* to the New Hampshire offense for which he was later convicted and sentenced, and Florida was, for all intents and purposes, acting as New Hampshire's agent when it incarcerated him. While the State constructs an inventive argument focusing upon the outer limits of New Hampshire's control over this defendant,

> [i]n the real world this [defendant] was . . . subject to the jurisdiction of this state while he was held in Florida, because . . . his incarceration was . . . within the control of this state, subject to continuance or termination solely at its command.

*Johnson v. Manson*, 493 A.2d 846, 859 (Conn. 1985) (Shea, J., dissenting), *cert. denied*, 474 U.S. 1063 (1986).

The State also argues that the pretrial confinement credit statute is inapplicable because the defendant was not awaiting trial, but was instead awaiting extradition. *See* RSA 651-A:23. The State contends that "[s]ince the attempt to extradite the defendant could have proven unsuccessful, he was not 'awaiting . . . trial' until the extradition was completed."

A State's extradition powers flow from the United States Constitution:

> A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another

> state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

U.S. CONST. art. IV, § 2, cl. 2. While a defendant has the right to judicial review of his extradition, the inquiry is exceedingly limited. A court may only consider: "(a) whether the extradition documents on their face are in order; (b) whether [the accused] has been charged with a crime in the demanding state; (c) whether [the accused] is the person named in the request for extradition; and (d) whether [the accused] is a fugitive." *Cuyler v. Adams*, 449 U.S. 433, 443 n.11 (1981) (quotation omitted).

If the State properly fills out the paperwork and does not attempt to extradite people who have not committed crimes in New Hampshire, there is hardly a realistic likelihood that the attempt to extradite the defendant will prove unsuccessful. Furthermore, the State apparently grants pretrial confinement credit to defendants while they await a competency hearing, a probable cause determination, indictment, or numerous other pretrial determinations even though it is equally or even more likely that the State's attempts to bring the accused to trial will be thwarted in these circumstances. It is not apparent that time spent in jail during an extradition proceeding is different from time spent awaiting any other preliminary stage of a criminal proceeding. *Cf. Palmer v. Dugger*, 833 F.2d 253, 256 (11th Cir. 1987) ("we perceive no distinction in principle between the presentencing incarceration of an indigent criminal defendant in the state where he will be tried and his presentencing detention in another state while awaiting extradition"); *Johnson*, 493 A.2d at 858 (Shea, J., dissenting) ("when a person is confined during the period necessary for disposition of a criminal charge, time passes no more swiftly awaiting the resolution of one step of the process than another"). The arbitrary exclusion of the time spent awaiting extradition, when credit is granted for every other preliminary phase of trial, finds no support in the language of the statute or the policies that undergird it.

The majority takes a slightly different approach to the "awaiting trial" issue, arguing that granting credit to this defendant would require modification of "RSA 651-A:23 by adding the words 'while awaiting extradition.'" The unstated assumption behind this putative dichotomy is the debatable notion that one cannot be "awaiting extradition" while "awaiting trial." Taken to its extreme, the majority's argument would also deny credit to those who are "awaiting indictment," "awaiting arraignment," or "awaiting a

competency determination." It is always possible to slice off some preliminary phase of a criminal proceeding and announce that the time was not spent "awaiting trial." This arbitrary application of labels has, however, been eschewed by this court in the past, as we have noted that application of a label "does not alter or diminish [the event's] consequence to the defendant. Credulity is strained to say that it does." *State v. Corson*, 134 N.H. 430, 433, 593 A.2d 248, 250 (1991) (addressing classification of offenses for purposes of appeal to superior court); *see also State v. Goodnow*, 140 N.H. 38, 41, 662 A.2d 950, 952 (1995) (addressing classification of offenses for double jeopardy purposes). Substantive evaluation of the character of the time period in question compels the conclusion that time spent awaiting extradition is time spent under the control of the State prior to trial, and the defendant is therefore entitled to credit.

Although not addressed by the majority, the State further argues that when a defendant is incarcerated as a fugitive from justice, the basic principles underlying pretrial confinement credit do not apply. Specifically, the State points to our decision in *State v. Decker*, 127 N.H. 468, 503 A.2d 796 (1985), in which this court stated that

> *[o]ne principle* underlying the credit statutes is that an indigent offender unable to furnish bail should serve no more and no less time in confinement than an otherwise identically situated offender who succeeds in furnishing bail.

*Id.* at 470, 503 A.2d at 797 (emphasis added); *see also King v. Wyrick*, 516 F.2d 321, 323 (8th Cir. 1975) (Federal Constitution mandates this rule). The State argues that because "[a] fugitive from justice typically has no right to bail" and is "incarcerated for reasons other than indigency, the rationale for credit disappears." While the State would have us recast our explanation of "one principle" as the statute's *sole* underlying principle, there is no reason why this court should foreclose future consideration of the other legitimate objectives that underlie the statute. *See, e.g., People v. Chamberlain*, 358 N.W.2d 572, 575 (Mich. Ct. App. 1984) (noting that "primary purpose of the sentence credit statute is that of preventing the unnecessary chilling of the exercise of the right to trial"); *Ex Parte Green*, 688 S.W.2d 555, 557 (Tex. Crim. App. 1985) (stating that credit statute recognizes pretrial confinement "has an incidental punitive effect in that it deprives the detainee of his liberty"). Moreover, because inmates awaiting extradition in Florida *are* eligible to be released on bail, *see* Fla. Stat. ch. 941.16 (1995) (bail allowable unless crime charged is punishable by death or life

imprisonment); *accord* RSA 612:16 (1986) (same), *Decker* weighs against announcing a rule that would primarily affect those who, for reasons of indigency, are unable to obtain their release in the asylum State. This court observed in *Decker* that the credit statute "mandate[s] that a prisoner is to receive credit for *all jail time* — neither more *nor less* — served before sentencing which relates to the criminal episode for which the prisoner is sentenced," and there is no need to abandon this rule in the present case. *Decker*, 127 N.H. at 471, 503 A.2d at 798 (emphasis added) (quotation omitted).

Even if we assume that defendants who violate their probation are routinely denied bail because of the flight risk they pose, the pretrial confinement statute still serves an important role that this court did not have reason to discuss in *Decker*. Specifically, the statute ensures that similarly situated defendants are incarcerated for similar lengths of time, regardless of where they are resentenced. In the absence of the pretrial confinement credit scheme, similarly situated probationers who are subject to identical sentences could be imprisoned for vastly different lengths of time, depending on the length of the local trial court's docket and the prosecutor's and public defender's caseloads. In *Decker*, we specifically rejected an interpretation of the statute that would have resulted in disparate lengths of incarceration, *Decker*, 127 N.H. at 470, 503 A.2d at 797, and this rationale weighs against denying credit in this instance.

Furthermore, denying credit *solely* to those who contest extradition is fraught with potential constitutional problems. *Cf. White v. Lee*, 124 N.H. 69, 77-78, 470 A.2d 849, 854 (1983) ("[a] statute will not be construed to be unconstitutional where it is susceptible to a construction rendering it constitutional"). "If a defendant were denied credit for time spent in jail solely because he was resisting extradition it would seriously penalize a person for exercising his [constitutional] right to resist extradition." *In re Watson*, 566 P.2d 243, 248 (Cal. 1977); *see also Blackledge v. Perry*, 417 U.S. 21, 28 (1974) (due process violated when defendants are punished for exercising their rights). Additionally, by not limiting its holding to those who are denied bail in the asylum State, the majority exposes the pretrial credit statute to future constitutional attack as its interpretation of the statute will often deny credit to defendants who are not released in the asylum State solely because they could not afford to pay for their freedom. *See Palmer*, 833 F.2d at 255-56 (Federal Constitution requires out-of-state pretrial credit towards maximum sentence when inmate was unable to obtain release in asylum State solely because of indigency); *Faye v. Gray*, 541 F.2d

665, 667-68 (7th Cir. 1976) (Federal Constitution requires pretrial credit toward sentence of extradited indigent defendant, regardless of whether he received maximum sentence). While the State contends that denying pretrial confinement credit to those who contest extradition *merely* forces defendants to make a "choice," in this case the defendant's decision to exercise his constitutional right to contest the extradition will result in several additional *months* of incarceration. Such a result "must inevitably operate to discourage the free exercise of that constitutional right," *Johnson*, 493 A.2d at 860 (Shea, J., dissenting), and, in reality, represents no choice at all.

I would therefore hold that under the statute the defendant is entitled to credit for all of the time he was in physical custody prior to trial, even if a portion of that time was served in another State's penal system. *Accord People v. Hardman*, 653 P.2d 763, 764 (Colo. Ct. App. 1982); *State v. Mason*, 900 P.2d 172, 180-81 (Haw. Ct. App.), *cert. denied*, 902 P.2d 976 (Haw. 1995); *People v. Gibson*, 300 N.W.2d 500, 501-02 (Mich. Ct. App. 1980) (per curiam). I do not suggest that a defendant would be entitled to credit if the time served in the foreign jurisdiction was the result of unrelated crimes committed within that jurisdiction. *See State v. Coe*, 554 A.2d 656, 658-59 (Vt. 1988). Similarly, this court need not address at this time whether such credit would be appropriate in a situation in which a defendant is an escapee, as opposed to a probation violator. *See Beauchamp v. Murphy*, 37 F.3d 700, 706-07 & n.5 (1st Cir. 1994) (noting that Massachusetts gives credit to extradited parolees, but not to escaped prisoners), *cert. denied*, 115 S. Ct. 1365 (1995). The pretrial credit statute, however, arguably has no applicability to escapees, as such defendants have been conclusively tried and sentenced, as contrasted with a defendant who has yet to be sentenced or a probationer over whom the trial court "retain[s] jurisdiction to limit the defendant's liberty interest further . . . . [because] the sentencing function [has] not ended . . . ." *State v. White*, 131 N.H. 555, 558, 556 A.2d 308, 311 (1989).

Key to this case is the simple fact that the pretrial credit statute makes no distinction between out-of-state and in-state custody, and I see no reason to change the plain meaning by reading into it an exception for the time a prisoner has spent in the custody of another State pursuant to an arrest for a New Hampshire offense. If the State wishes to punish defendants who flee the jurisdiction, the legislature can enact separate criminal provisions. *Cf.* RSA 642:6, I (1996) ("'[a] person is guilty of an offense if he escapes from official custody"). There is no need to achieve the State's policy objectives

through judicial amendment of the pretrial credit statute. Accordingly, I respectfully dissent.

HORTON, J., joins in the dissent.