Hillsborough-southern judicial district
No. 97-700

THE STATE OF NEW HAMPSHIRE

v.

GUY HATT

October 25, 1999

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Guy Hatt, was convicted after a bench trial in Superior Court (*Conboy*, J.) of armed robbery. *See* RSA 636:1 (1996). We affirm.

The following undisputed facts were adduced at trial. In January 1997, the defendant entered a store in Hollis, pointed an unloaded handgun at the cashier, and demanded that she give him the money in the cash register. As he left the store, he warned that if she called the police, he would kill her.

The defendant was charged with robbing the store while being actually armed with a deadly weapon. *See* RSA 636:1, III(a). He conceded that he could be convicted of robbery, a class B felony. *See* RSA 636:1, I. He asserted, however, that because the gun was not loaded at the time of the robbery, it was not a "deadly weapon" for purposes of RSA 636:1, III(a), and that he could not be convicted of armed robbery, a class A felony, as charged in the indictment. The trial court concluded that the gun constituted a "deadly weapon,"

found the defendant guilty of armed robbery, and sentenced him pursuant to RSA 651:2, II-g (Supp. 1998). *See* RSA 636:1, III. This appeal followed.

The sole issue on appeal is whether an unloaded handgun constitutes a "deadly weapon" as defined by RSA 625:11, V (1996). We conclude that it does.

 "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Dow v. Sears, Roebuck & Co.*, 143 N.H. 166, 167, 720 A.2d 598, 598 (1998) (quotation omitted). We construe provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3 (1996). Although we look to the plain and ordinary meaning of the statutory language in determining legislative intent, we will not read the words and phrases in isolation, *see State v. Powell*, 132 N.H. 562, 567, 567 A.2d 568, 571 (1989), or add words that the legislature chose not to include, *see State v. Harnum*, 142 N.H. 195, 197, 697 A.2d 1380, 1382 (1997).

As used in the Criminal Code, "deadly weapon" is defined as "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V. The defendant argues that because an unloaded firearm is incapable of producing death or serious bodily injury, it does not meet this definition. The State counters that the language "capable of producing death or serious bodily injury" modifies only the phrase "other substance or thing." Even assuming that the phrase "capable of producing death or serious bodily injury" applies to firearms, *but see State v. Riley*, 703 A.2d 347, 350 (N.J. Super. Ct. App. Div. 1997), we conclude that the defendant's handgun, as he threatened to use it in this case, was known to be capable of producing death or serious bodily injury.

The defendant argues that unloaded firearms are "intrinsically incapable of causing death." The defendant reads the phrase "capable of producing death or serious bodily injury" in isolation. In context, the legislature defined "deadly weapon" as a weapon which is *known to be* capable of producing death or serious bodily injury. According to the defendant, however, "[t]he phrase 'known to be' limits the definition to those objects that are actually capable, *and* known to be capable of causing death or serious bodily injury." We disagree.

The term "known" is commonly understood as meaning "generally recognized." WEBSTER'S THIRD NEW INTERNATIONAL DICTION-

ARY 1253 (unabridged ed. 1961). Thus, the legislature clearly intended to limit the definition of deadly weapon to those instruments which are *objectively* understood to be capable of causing death or serious bodily injury in the manner in which they are used, intended to be used, or threatened to be used. *Cf. State v. Rines*, 413 A.2d 643, 644 (N.J. Super. Ct. Law Div. 1980); *accord State v. Butler*, 445 A.2d 399, 404 (N.J. 1982). The legislature did not require the State to prove that a particular weapon is *actually* capable of causing death or serious bodily injury, and we will not add that requirement. Moreover, although the legislature has not defined the term "firearm," we have interpreted it to mean a "weapon [that] is designed to, or is capable of, discharging a shot by gunpowder, [but not necessarily] capable of discharge at the time of the offense." *State v. Taylor*, 136 N.H. 131, 133, 612 A.2d 917, 919 (1992). The defendant has offered no argument persuading us that this interpretation should not apply to RSA 625:11, V. Thus, we will not add a requirement under RSA 625:11, V that the State prove that a firearm in a particular case was loaded. The legislature could have added this requirement if it so desired, as it clearly has in other contexts. *See, e.g.*, RSA 212:17 (1989).

The defendant also argues that if actual capability of causing death or serious bodily injury is not required to prove that a weapon is deadly, a defendant could be convicted under RSA 636:1, III(a) of armed robbery if the defendant threatened to shoot the victim with a realistic-looking toy gun. Thus, he argues that RSA 636:1, III(b), which elevates robbery to armed robbery if the defendant "[r]easonably appeared to the victim to be armed with a deadly weapon," would be rendered superfluous. We disagree. Threatening to fire a toy gun is not objectively understood to be capable of causing death or serious bodily injury. *See Rines*, 413 A.2d at 644. Thus, RSA 636:1, III(a) would not apply in that scenario.

The defendant does not contest that he threatened to shoot the victim if she did not comply with his demand for money, or if she called the police. We conclude that a firearm, threatened to be fired at a person, is generally understood to be capable of causing death or serious bodily injury. *Cf. McLaughlin v. United States*, 476 U.S. 16, 17 (1986). Accordingly, we hold that the trial court did not err in concluding that the handgun in this case was a deadly weapon.

*Affirmed.*

THAYER, J., did not sit; the others concurred.