Strafford
No. 2000-571

THE STATE OF NEW HAMPSHIRE

v.

SUSAN P. GELINAS

Argued: January 3, 2002
Opinion Issued: February 11, 2002

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Susan P. Gelinas, appeals her conviction for conspiring to distribute cocaine. RSA 629:3 (Supp. 2001); RSA 318-B:2, :26 (Supp. 2001). She argues that she was entitled to a more favorable jury instruction regarding her entrapment defense than that given by the Superior Court (*T. Nadeau*, J.). We affirm.

The record supports the following facts. A confidential informant for the New Hampshire Drug Task Force (task force) approached the defendant on numerous occasions asking if she could help him purchase cocaine. Although she initially declined the requests, she finally agreed. On March

19, 1998, the informant and a task force undercover agent, Sergeant James O'Neil, went to the defendant's house seeking to purchase cocaine. The defendant contacted a drug dealer, who provided the cocaine, and she assisted in selling the drug to O'Neil. On two subsequent occasions, March 25 and April 24, the defendant again arranged for, and participated in, the sale of cocaine to undercover agent O'Neil. Based upon these events, the defendant was arrested and charged with four counts: selling cocaine on March 19; conspiring to sell cocaine on March 19, and conspiring to sell cocaine on March 25-26 and April 24, respectively. *See* RSA 318-B:2, :26; RSA 629:3. The defendant asserted the affirmative defense of entrapment, *see* RSA 626:5 (1996), arguing that the task force and its informant coerced her into committing criminal acts to which she was not predisposed.

During deliberations, the jury asked the following question:

> Is entrapment an umbrella defense[?] If we find entrapment on the 1st offense does it carry [through] for all offenses[?]

In chambers, the trial court heard arguments regarding the response it should give to the question. The State contended that each indictment in a series of criminal charges must be considered separately when determining if an entrapment defense applies to it. The defendant countered that, under the facts of the case, if the jury found the first offense in the series was the result of entrapment, any subsequent offense must be found to be the product of the initial entrapment. The trial court submitted the following response to the jury:

> You should consider each indictment separately and return a verdict on each based on the evidence presented. If you find the· defendant was not predisposed to commit the crime on the first incident, then you should consider that finding in deciding whether she was not predisposed on the following incidents. If you find the defendant was entrapped on the first incident, you do not necessarily have to find she was entrapped on the remaining incidents.

The jury deadlocked on the two charges stemming from the events on March 19, convicted the defendant of conspiracy to sell cocaine on March 25-26 and acquitted her of the April 24 conspiracy charge. The defendant now appeals, arguing that she was entitled to a jury instruction, as a matter of law, that if the jury found her entrapped regarding the first offense then it *should find* her entrapped regarding any subsequent offense.

Jury instructions are meant "to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v.*

*Jackson*, 141 N.H. 152, 153 (1996) (quotation omitted). When a defendant alleges that an instruction is erroneous, we evaluate it "in the context of the trial court's whole charge." *State v. Marti*, 143 N.H. 608, 617 (1999) (quotation omitted). "Reversal is not warranted unless the charge, as a whole, does not fairly cover the issues of law of the case." *Id.* (quotation omitted).

■ ■ The defendant invites us to adopt a theory of continuing entrapment. Under that theory, a defendant who is initially entrapped by the government to commit the first in a series of similar crimes "cannot then become unentrapped" during the commission of subsequent crimes. *United States v. Lessard*, 17 F.3d 303, 306 (9th Cir. 1994). At its core, this theory turns upon the supposition that "once entrapped, always entrapped." Alternatively, the defendant argues that if the first in a series of offenses is the product of entrapment, a presumption exists that any subsequent act is a product of the initial entrapment. Because we do not interpret RSA 626:5 as requiring a continuing entrapment or a presumption of continuing entrapment instruction, we decline to accept the defendant's invitation.

RSA 626:5 states:

> It is an affirmative defense that the actor committed the offense because he was induced or encouraged to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence against him and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. However, conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

In general, the purpose of the affirmative defense of entrapment "is to prevent a defendant from being convicted of *a* crime manufactured by law enforcement officers." *State v. Bacon*, 114 N.H. 306, 308 (1974) (emphasis added). Nothing in the statute indicates that a finding of entrapment as to the first charge precludes a finding of guilt as to subsequent crimes also charged; nor does the statute create a presumption of such an outcome. We will not add words the legislature chose not to include. *State v. Hatt*, 144 N.H. 246, 247 (1999). On the contrary, the plain language of the statute supports the conclusion that whether a defendant is entrapped must be determined for each individual offense charged. *See* RSA 626:5 (referring to the offense in the singular).

Further, common sense persuades us that a defendant's disposition to commit a crime may change over time. In essence, "[s]inners may become saints and saints may become sinners. Nothing is necessarily permanent about either state." *United States v. Vaughn*, 80 F.3d 549, 552 (D.C. Cir. 1996). The theory of continuing entrapment limits examination of a defendant's state of mind to the facts surrounding a first offense and ignores the possibility that a defendant can become predisposed to commit crime after initially being entrapped. In essence, interpreting RSA 626:5 to include the theory of continuing entrapment would grant a defendant entrapped into committing one offense a license to commit innumerable subsequent offenses, regardless of whether the defendant's disposition to commit crime has changed over time. Such a result would be untenable. *See State v. Williams*, 143 N.H. 559, 562 (1999).

■ Whether the jury finds the defendant was entrapped as to one offense does not, as a matter of law, "immunize the defendant from criminal liability for subsequent transactions that he or she readily and willingly undertook." 21 AM. JUR. 2D *Criminal Law* § 252 (1998). This reasoning and the plain language of RSA 626:5 lead us to find that a jury instruction on either the theory of continuing entrapment or the presumption of continuing entrapment is not required.

Here, the trial court instructed the jury that it "should consider each indictment separately and return a verdict on each based on the evidence presented. If [it] find[s] the defendant was not predisposed to commit the crime on the first incident, then [it] *should consider* that finding in deciding whether she was not predisposed on the following incidents." (Emphasis added). This instruction, directing the jury to consider any initial lack of predisposition when considering whether the subsequent offenses were a product of entrapment, was more generous than required by law and reversal is unwarranted. *See Marti*, 143 N.H. at 617.

*Affirmed.*

BROCK, C.J., and DALIANIS, J., concurred.