Nashua District Court
No. 2000-453

THE STATE OF NEW HAMPSHIRE

v.

JASON K. GAFFNEY

Argued: November 14, 2001
Opinion Issued: April 12, 2002

*Philip T. McLaughlin,* attorney general (*Ann M. Rice,* senior assistant attorney general, on the brief and orally), for the State.

*Lawson & Weitzen, LLP,* of Boston, Massachusetts (*Robert J. Roughsedge* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Jason K. Gaffney, was convicted in Nashua District Court (*Gormley,* J.) of one count of disorderly conduct, *see* RSA 644:2, III(a) (1996), and one count of criminal trespass, *see* RSA 635:2, II(b)(2) (1996). The defendant appeals both convictions. We remand.

The record supports the following facts. Officer Kevin Girouard of the Nashua Police Department and his partner conducted a traffic stop of an automobile driven by the defendant's fiancée. The defendant was riding in the front passenger seat of the automobile. As Officer Girouard neared the completion of his discussion with the driver, the defendant questioned the reasons for the traffic stop and stated that Officer Girouard had no right to stop them. After returning the driver's license and registration, Officer Girouard suggested to her that the defendant's attitude could result in her receiving a ticket in a future traffic stop. This prompted the defendant to taunt Officer Girouard to give him a ticket, adding that he knew the law

and would see the officer in court. In response, Officer Girouard commented to the defendant, an African-American, "Who do you think you are, Johnny Cochran?" The defendant repeatedly told Officer Girouard to return to his cruiser, and indicated that he was going to file a complaint against him.

The defendant and his fiancée proceeded to the Nashua Police Department, where the defendant indicated he wanted to file a complaint against a police officer. He was immediately referred to Sergeant Jamie Provencher, the station supervisor on duty, who met the couple and escorted them to his office. There the defendant explained the situation, including his perception of Officer Girouard's comment as racially motivated and thus a violation of his civil rights. Sergeant Provencher began to ask a series of questions concerning the defendant's account of the incident, but the defendant was reluctant to answer. The defendant insisted that it was improper for Sergeant Provencher to inquire about the attendant circumstances of the incident and that he was instead required to simply record the complaint.

In the ensuing few minutes, the defendant became increasingly belligerent and loud in his insistence that he be provided with a written statement indicating that Sergeant Provencher would not allow him to make his complaint. Sergeant Provencher repeatedly warned the defendant that if he did not quiet down, he would have to leave the police station, and that he would be arrested if he did not leave. When the defendant continued his tirade, Sergeant Provencher ordered him to leave the police station. The defendant refused to leave, stating that he would not leave until his complaint was taken, and that he would go to the State police if that were not done. The defendant's yelling and screaming in Sergeant Provencher's office attracted the attention of several other police officers in the station, one of whom also ordered Gaffney to leave. Sergeant Provencher continued to order the defendant to leave the police station. With his hand on Gaffney's elbow, Sergeant Provencher escorted the defendant from his office and the police station lobby to the outside door; all the while Gaffney continued yelling and refusing to leave. Gail VanKeuren, a citizen, was near the station lobby and witnessed the incident. At the outside door, Sergeant Provencher released the defendant's elbow and turned to return to his office. Gaffney, however, refused to leave, and continued to yell. Faced with the defendant's actions, and concerned for the people in the police station lobby, Sergeant Provencher placed the defendant under arrest.

On appeal, the defendant argues that his convictions should be reversed because: (1) the actions of the Nashua Police Department violated his rights to freedom of speech and to petition the government for the redress

of wrongs, as provided for by both the State and Federal Constitutions; (2) both RSA 644:2 (disorderly conduct) and RSA 635:2 (criminal trespass) are unconstitutionally overbroad and vague; (3) the evidence was insufficient to find him guilty beyond a reasonable doubt on either charge; (4) the trial court erred in denying him the opportunity to obtain discovery materials, which he intended to use to support a claim that RSA 644:2 and RSA 635:2 were not applied uniformly; and (5) the defendant's right to due process was denied because the State failed to produce certain potentially exculpatory documents.

The defendant first argues that because his right to file a complaint with the Nashua Police Department was protected by both the free expression provisions of the State Constitution and the First Amendment to the Federal Constitution, Sergeant Provencher's order to leave the police station was unlawful. The defendant maintains that because his purpose was legitimate, his conviction for disorderly conduct was improper. Similarly, the defendant argues that because he was licensed and privileged to enter and remain on the subject premises, his conviction for criminal trespass was also untenable. We will not engage in this constitutional analysis, however, as the defendant failed to preserve the argument below. *See State v. Cole*, 142 N.H. 519, 521 (1997).

The defendant next argues that RSA 644:2 and RSA 635:2 are unconstitutionally overbroad and vague because they allow the police unfettered discretion in their application, thereby violating Part I, Articles 22 and 32 of the State Constitution and the First Amendment to the Federal Constitution. We will not engage in a constitutional analysis of the overbreadth claim as the defendant failed to preserve that argument below. *See id.*

█ We note that the defendant blurs the distinction between the constitutional doctrines of overbreadth and vagueness. On appeal, the defendant argues that the disorderly conduct and criminal trespass statutes are vague, thereby violating the free speech provisions of the State and Federal Constitutions. This is patently incorrect. The vagueness doctrine rests upon the Due Process Clauses of the Fifth and Fourteenth Amendments and applies solely to legislation which is lacking in clarity and precision. *See State v. Pike*, 128 N.H. 447, 451 (1986). However, a review of the motion for a directed verdict and supporting oral argument reveals that the defendant failed to preserve a vagueness claim under either the State or Federal Constitutions. Although the defendant made reference to vagueness below, he failed to specify which constitutional provisions were allegedly being violated, and he neglected to state whether his claims were founded upon State or federal grounds. *See State v.*

*Stratton*, 132 N.H. 451, 456 (1989). Because the defendant failed to articulate a specific constitutional provision, we will not perform either a State or federal constitutional analysis. *See id.; State v. Dellorfano*, 128 N.H. 628, 632 (1986); *State v. Westover*, 127 N.H. 130, 131 (1985).

The defendant next argues that there was insufficient evidence to find him guilty of either disorderly conduct or criminal trespass. In order to prevail on a challenge to the sufficiency of the evidence, a defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and reasonable inferences therefrom in the light most favorable to the State, could conclude beyond a reasonable doubt that the defendant committed the charged crime. *See State v. Zeta Chi Fraternity*, 142 N.H. 16, 20, *cert. denied*, 522 U.S. 558 (1997). The disorderly conduct statute states, in pertinent part:

> A person is guilty of disorderly conduct if:
>
> III. He purposely causes a breach of the peace, public inconvenience, annoyance or alarm, or recklessly creates a risk thereof, by:
>
>> (a) Making loud or unreasonable noises in a public place ... which noises would disturb a person of average sensibilities ....

RSA 644:2, III(a).

■ ■ In *State v. Murray*, 135 N.H. 369, 372 (1992), we held that someone other than the arresting officer must be disturbed for there to be a public disturbance within the meaning of RSA 644:2, III(a). Gail VanKeuren, a civilian, was in the police station attending to private business during the incident. Ms. VanKeuren testified during trial that she was "stunned" and a "little shocked" because the defendant was "loud, and vocal, verbal and what [she] considered to be disrespectful of the police officers." Three police officers in the station supported Ms. VanKeuren's account, testifying that the defendant was so loud and irate that they each inquired if Sergeant Provencher needed assistance. Even though the officers cannot be the subjects of disorderly conduct, they may be witnesses to support civilian testimony. Given that these witnesses were unanimous in their testimony, a rational trier of fact, evaluating all of the evidence and reasonable inferences therefrom in the light most favorable to the State, could conclude beyond a reasonable doubt that the defendant was guilty of disorderly conduct.

We next evaluate the sufficiency of the evidence upon which the defendant was convicted of criminal trespass. *See* RSA 635:2. A person is guilty of criminal trespass under these circumstances if

> (b) [he] knowingly enters or remains:
>
> > (2) In any place in defiance of an order to leave or not to enter which was personally communicated to him by the owner or other authorized person . . . .

RSA 635:2, II(b). There is no dispute that the defendant was entitled to enter the police department to file a complaint. Rather, the defendant's conviction stems entirely from his unwillingness to leave. Once the conversation between the defendant and Sergeant Provencher became contentious, the defendant was repeatedly ordered to leave the police station. The defendant refused to leave until his complaint was taken. Eventually, the defendant had to be escorted from Sergeant Provencher's office and to the front door by several police officers. While the defendant was being escorted to the door, he continued to exclaim that he would not leave.

■■ The defendant argues that the State is unable to prove that he knew he was neither licensed nor privileged to remain on the property. As noted earlier, the defendant failed to preserve the constitutional component of this argument. In *State v. Dupuy*, 118 N.H. 848 (1978), we considered whether a person, once invited onto a premises, can still be found guilty of criminal trespass. In affirming the decision, we determined that, even assuming a defendant was legitimately invited onto a premises, that fact did not preclude the charge that she knew she was not licensed or privileged to remain on the property. *See id.* at 851-52. As in *Dupuy*, it is clear in the present case that the defendant received sufficient warning and instruction to quit the premises prior to being arrested. Given the repeated orders by individuals in actual or apparent authority to leave the police station, and the defendant's refusal to do so, the evidence was sufficient to support his conviction for criminal trespass.

■ This incident began when the defendant made intemperate and unnecessary comments to the police officer while at the scene of the original stop. The officer responded with equally intemperate and wholly unnecessary remarks which resulted in the defendant going to the Nashua Police Station to file a complaint. Law enforcement officers are entitled to perform their duties without hostile challenges from members of the public. Officers of the law, on the other hand, are expected to act with

civility even in the face of incivility. *See State v. Briggs*, 147 N.H. 431 (2002). The absence of that civility, however, does not change the fact that the evidence in this case was sufficient to convict the defendant beyond a reasonable doubt.

. The defendant next argues that the trial court erred when it denied him the opportunity to obtain discovery related to possible racial discrimination or profiling practiced by the Nashua Police Department. The defendant suggests that the discovery of these materials could be critical in demonstrating that the statutes in question were not uniformly applied. In particular, the defendant requested documents or reports concerning any investigation or review of the Nashua Police Department for racial discrimination or profiling, any documents concerning complaints or investigations of racial discrimination or profiling by any member of the department, and an *in camera* review of the personnel and disciplinary records of Officer Girouard and Sergeant Provencher. The trial court issued a written order denying the defendant's discovery requests.

. ■■ We review the trial court's decisions on the management of discovery and admissibility of evidence for an unsustainable exercise of discretion. *See State v. Johnson*, 144 N.H. 175, 180 (1999); *see also State v. Lambert*, 147 N.H. 295, 296 (2001). To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *See Johnson*, 144 N.H. at 181. In denying the defendant's request for information concerning racial profiling and discrimination by the Nashua Police Department and its officers, the trial court held, given the context of the pending charges, that such a request was overbroad and unlikely to lead to relevant information. We agree. In *United States v. Armstrong*, 517 U.S. 456, 468 (1996), the Court required "some evidence tending to show the existence" of discrimination to establish entitlement to discovery in selective prosecution claims. We find the *Armstrong* Court's reasoning persuasive. The charges against the defendant stemmed from his behavior while in the Nashua Police Station. That he was there to legitimately report an alleged civil rights violation is neither a justification for his subsequent behavior, nor a viable defense to its criminality.

■ With respect to the defendant's request for an *in camera* review of the personnel records of Officer Girouard and Sergeant Provencher, the trial court correctly determined that the defendant bore the burden to establish that there was a realistic and substantial likelihood that evidence helpful to his. defense would be obtained from the officers' personnel

records. *See State v. Puzzanghera*, 140 N.H. 105, 106-08 (1995). A review of the trial record fails to indicate, given the limited nature of the charges against the defendant, that evidence helpful to the defendant would be found in the personnel files.

Therefore, we find that the decision to deny the defendant's discovery requests was neither untenable nor unreasonable.

Finally, the defendant contends that the State's failure to turn over potentially exculpatory evidence violated his right to the due process of law. Prior to trial, the defendant requested from the State all witness statements and all potentially exculpatory materials. After an *in camera* review of the Nashua Police Department's Internal Affairs file, the trial court ordered production of the witness statements. At trial, the defendant learned of the existence of a memorandum, drafted by Sergeant Provencher to the department's internal affairs division, describing the incident with the defendant. The defendant also learned that Captain Hefferan had drafted a complaint form based upon a telephone conversation with the defendant the day after his arrest. The State admits that these documents were not provided to the trial court for *in camera* review. The defendant argues that the State's failure to disclose this evidence violated his due process rights by depriving him of a fair trial and therefore should result in the reversal of both convictions.

The State concedes that its failure to disclose the evidence in question was improper and argues that the appropriate remedy is to remand the matter to the trial court for further review. We agree. The substance of the undisclosed evidence remains unclear. As such, we remand this matter to the trial court for the limited purpose of an *in camera* review of the undisclosed documents. If the trial court discovers evidence that the defendant could have used at trial which would have affected the verdict, it should order a new trial. *See, e.g., State v. Gagne*, 136 N.H. 101, 106 (1992).

*Remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.