Belknap
No. 2001-401

THE STATE OF NEW HAMPSHIRE

v.

JOHN JORDAN

Argued: June 12, 2002
Opinion Issued: July 24, 2002

*Philip T. McLaughlin*, attorney general (*Laura E. B. Lombardi*, attorney, on the brief and orally), for the State.

*Law Office of David H. Bownes, P.C.*, of Laconia (*David H. Bownes* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, John Jordan, was convicted by a jury of one count of second degree assault, *see* RSA 631:2 (1996), and one count of simple assault, *see* RSA 631:2-a (1996). On appeal, he argues that the

Superior Court (*Perkins*, J.) erred by admitting certain evidence into trial and denying his motion to dismiss the simple assault charge. We affirm.

A jury could have reasonably found the following facts. On June 7, 2000, Scott Selg went to the defendant's residence at approximately 7:45 p.m. to help Patricia Lance, the defendant's wife, with some gardening. Shortly after Selg's arrival, the defendant telephoned his house and learned that Selg was there. Upset, he rushed home and confronted Selg, yelling at him to get off of his property.

The defendant quickly approached Selg, which prompted Selg to move into a defensive stance. The two men began swinging at each other, and the defendant hit Selg. Selg then got into his truck to leave, and Lance approached him to apologize for the defendant's behavior. The defendant then pushed Lance to the ground, fracturing her arm. Unable to get up, Lance told her daughter, Erica, to call 911 for help. During the 911 telephone call, Erica told the operator that "[m]y father came home drunk . . . and he slammed my mother on the ground." She also stated that the defendant "was punching this guy who was helping us . . . ."

At approximately 8:00 p.m., Sergeant Mark Chase of the Center Harbor Police Department received a dispatch from the Belknap County Sheriff's Office and went to the defendant's residence. At trial, Sergeant Chase testified that Lance told him that the defendant pushed her to the ground. He also testified that Lance's daughter, Kristina, told him that "her father had come home drunk and hit Scott and then pushed her mother." The defendant was arrested that night. Two days later, Lance prepared a written statement in which she stated that the defendant "hit S[elg]" and that he "came running at [her] and pushed [her] onto the ground."

Prior to trial, the State filed a motion *in limine* to admit the tape of the 911 telephone call. The defendant objected, arguing that the probative value of the tape was substantially outweighed by the risk of unfair prejudice and that the tape was not admissible under New Hampshire Rule of Evidence 403. The trial court admitted the tape into evidence, ruling that its probative value was not substantially outweighed by the risk of unfair prejudice. After reviewing the complete transcript of the 911 call, however, the court did redact certain statements made on the tape that it considered overly prejudicial.

At trial, the State played the 911 tape for the jury three times: first, in its opening statement; then during its case-in-chief; and finally in its closing argument. The defendant did not object at trial to the repeated playing of the tape, but objected only to the jury having access to the tape during its deliberations.

The defendant moved to dismiss the simple assault charge at the conclusion of the State's case-in-chief and at the end of trial, arguing that

there was insufficient evidence that he hit Selg, or that the contact was unprivileged. The court denied these motions, and the defendant was convicted of reckless second degree assault and simple assault. This appeal followed.

On appeal, the defendant argues that the trial court erred by: (1) admitting the 911 tape at trial; (2) admitting portions of the 911 tape that include statements by the 911 operator and the police dispatcher; and (3) refusing to dismiss the simple assault charge. We address each argument in turn.

## I. Admission of the 911 Tape

The defendant first argues that the 911 tape was inadmissible at trial because it was unfairly prejudicial under New Hampshire Rule of Evidence 403. He asserts that the recording was highly inflammatory and appealed to the jurors' sympathies because Erica was "hysterical" during the call, making numerous references to the defendant hitting Lance. He further argues that the tape was not necessary because Erica's statements could have been admitted at trial through other means. Finally, he argues that even if the tape was admissible, it was unfairly prejudicial to allow the State to play the tape numerous times during the trial.

New Hampshire Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. We accord the trial court considerable deference in determining whether probative value is substantially outweighed by the danger of unfair prejudice, and we will not disturb its decision absent an unsustainable exercise of discretion. *State v. Pelkey*, 145 N.H. 133, 136 (2000); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To show that the trial court exercised unsustainable discretion, the defendant must show that the ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Hurlburt*, 135 N.H. 143, 145 (1991), *cert. denied*, 503 U.S. 1008 (1992).

"Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." *Pelkey*, 145 N.H. at 136 (quotations omitted).

> [U]nfair prejudice is not, of course, mere detriment to a
> defendant from the tendency of the evidence to prove his guilt,

in which sense all evidence offered by the prosecution is meant to be prejudicial. Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged.

*State v. Cochran*, 132 N.H. 670, 672 (1990) (citations and quotations omitted).

██ The record supports the trial court's admission of the 911 tape. In its order, the trial court found the tape to be highly probative of the defendant's involvement in the altercation with Lance and Selg. As it correctly points out, unlike other evidence offered at trial, "[t]he 9-1-1 tape is as contemporaneous an account of the events as they occurred as possible." Moreover, the probative value of the tape is strengthened given the State's theory that witnesses, including Erica, were reluctant to testify against the defendant. While the State could have used other evidence to introduce Erica's statements at trial, "[t]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce." *State v. Evans*, 689 A.2d 494, 498 (Conn. App. Ct. 1997) (quotation omitted).

██ Nor do we find that the danger of unfair prejudice substantially outweighs the tape's probative value. Having listened to the tape, we disagree with the defendant's characterization of Erica as "hysterical" throughout the call. In fact, Erica sounds fairly calm and lucid at times, answering questions posed to her and following instructions. Thus, although Erica was understandably upset and crying at times, the tape is not so unduly emotional as to inflame a jury. A number of courts in other jurisdictions that have analyzed similar issues involving 911 calls have likewise held that their probative value was not substantially outweighed by any unfair prejudice. *See, e.g., State v. Wilds*, 515 S.E.2d 466, 477 (N.C. Ct. App. 1999); *Henry v. State*, 989 S.W.2d 894, 895-97 (Ark. 1999); *Evans*, 689 A.2d at 497-99; *Geiger v. State*, 859 P.2d 665, 668-69 (Wyo. 1993).

In addition, the trial court redacted various statements from the tape that it considered prejudicial, thereby minimizing any prejudicial effect on the defendant. We conclude, therefore, that the trial court did not commit an unsustainable exercise of discretion in admitting the tape at trial.

We note, however, that while the tape itself is not unfairly prejudicial, we are troubled by the fact that the prosecution played the tape three times during trial. The tape contains numerous statements by Erica, who is sometimes crying and upset, describing the assaults. Playing this tape

numerous times for a jury could increase the chance of generating a verdict based upon emotion rather than reason. In addition, the playing of the tape during the prosecution's opening statement and closing argument may well have been improper. Because defense counsel did not specifically object at trial or in his objection to the State's motion *in limine* to the number of times the tape was played or the occasions upon which it was played, we do not consider these issues on appeal. *See* N.H. R. Ev. 103 (b)(1) (grounds for objection to evidence are waived unless explicitly stated).

*II. Hearsay Statements*

The defendant next argues that certain statements made by the 911 operator and the Belknap County dispatch operator to Erica and to each other should have been excluded as hearsay.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement, and is generally inadmissible unless it falls within one of the many exceptions which provide for admissibility." *State v. McPherson*, 127 N.H. 826, 828 (1986) (quotation and ellipsis omitted). We will not reverse a trial court's ruling regarding the admissibility of evidence absent an unsustainable exercise of discretion. *Simpson v. Wal-Mart Stores*, 144 N.H. 571, 575 (1999).

Having reviewed the redacted version of the 911 tape, we conclude that the trial court did not err in admitting the statements at issue. Where "an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted*, the hearsay rule does not apply." *State v. Dube*, 130 N.H. 770, 772 (1988) (quotation omitted). While it is clear that the statements that were introduced in the 911 tape were made out of court, they were not offered for the truth of the matter asserted. Rather, the purpose of these statements, many of which were questions and directions posed to Erica, was to put Erica's statements into context and provide background for the call. Thus, the trial court did not err in admitting these statements at trial.

*III. Sufficiency of the Evidence*

Finally, the defendant asserts that there was insufficient evidence to support his conviction of simple assault against Selg.

"When reviewing the sufficiency of the evidence, we ask whether, based upon all the evidence and all reasonable inferences from it, when considered in a light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty." *State v. Clyde*, 145 N.H. 388, 389 (2000) (quotation omitted). To

convict the defendant of simple assault, the State must prove beyond a reasonable doubt that he "[p]urposely or knowingly cause[d] bodily injury or unprivileged physical contact to another." RSA 631:2-a, I(a). The defendant argues that the State failed to prove that he had physical contact with Selg or that, if he did, such contact was unprivileged. In support of his position, the defendant relies upon various witnesses at trial, including Selg himself.

While no witness testified at trial that he or she saw the defendant hit Selg, there was other evidence introduced that could support the jury's verdict, including Lance's written statement made two days after the incident and Kristina's statement to Sergeant Chase made just minutes after the incident. Moreover, while vague, Erica states during the 911 call that the defendant "was punching this guy who was helping us . . . ."

> It is well settled that the jury has substantial latitude in determining the credibility of witnesses. It is the jury which observes the witnesses, judges their credibility and hears their testimony, accepting or rejecting it in whole or in part. In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses.

*Morrill v. Tilney*, 128 N.H. 773, 778 (1986) (citations and quotations omitted). Thus, the jury was allowed to reject witness testimony and rely upon earlier out-of-court statements to support its finding that the defendant hit Selg. This is particularly applicable given the State's theory that Lance, Selg and Erica were reluctant to testify at trial.

Finally, the evidence supports the jury's finding that the defendant's contact with Selg was unprivileged. The defendant testified that he rushed home and yelled at Selg to get off of his property. In addition, he testified that he was thinking, "I'm going to punch [Selg] in the stomach as hard as I can." There was also evidence that Selg moved into a defensive stance when the defendant approached him and that the two men were swinging their arms at each other. This evidence, when viewed in the light most favorable to the State, supports the jury's verdict that the defendant committed simple assault.

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.