Hillsborough-southern judicial district
No. 2002-029

### THE STATE OF NEW HAMPSHIRE

v.

### DELBERT STOTT

Argued: January 8, 2003
Opinion Issued: February 19, 2003

*Philip T. McLaughlin*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, Delbert Stott, appeals four convictions for aggravated felonious sexual assault, *see* RSA 632-A:2, II (1996), following a jury trial in the Superior Court (*Lewis*, J.). On appeal, he argues the trial court erred by denying his motions *in limine* to exclude certain statements he made to the police and certain testimony offered by a Nashua police officer on the credibility of the victim's complaints. We affirm.

The State presented the following relevant facts at trial. The defendant's son is the live-in boyfriend of the minor victim's mother. The defendant and his wife live next door to their son's family in Nashua.

On March 3, 2001, the defendant and his wife went to their son's home to baby-sit the seven-year-old victim and her two minor siblings overnight. Because the children's parents intended to be away all night, they had provided games and movies to occupy the children. Each of the alleged assaults occurred while the defendant was playing those games or watching those movies with the minor children, and while his wife was out of the room or unaware of her husband's actions. While they played games

and watched movies, the seven-year-old victim sat on the defendant's lap and the defendant rubbed her genitalia over her clothing. During one of the movies, the defendant moved his hands under the victim's clothes and directly touched her genitalia. The following morning, the defendant left the victim's home when her parents returned. The victim said nothing about the assaults.

Approximately one month later, on April 8, 2001, the victim told her brother, her mother and her mother's boyfriend about the assaults. The following day, the victim's mother reported the assaults to the Nashua Police Department and the division for children, youth, and families. Officer Ron Welliver took the victim's initial statement about the defendant's alleged assaults on the day of her mother's report.

On April 11, Detective Dennis Brown interviewed the victim in the presence of her mother. Detective Brown's preliminary questioning gauged the seven-year-old victim's knowledge about the difference between the truth and a lie and the difference between a good and a bad touch. Satisfied that the seven-year-old understood these differences, the detective conducted a formal interview about her complaint.

The next day, Detective Brown, along with another detective and the victim's mother, went to the defendant's home and told him that he should come to the station so the detectives could speak with him. Before going to the station, however, the defendant and his wife went to their son's home to find out the exact allegations against him. Upon learning what the victim had told the police, the defendant went directly to the police department and denied engaging in any sexual misconduct, in addition to making several other statements. The defendant made all of these statements before Detective Brown asked a single question.

The defendant's statements, which were the subject of his motion *in limine* and admitted at trial, were that: (1) he did not want to die in jail; (2) prosecutors were more like persecutors; (3) laws were not infallible; (4) he no longer had marital relations with his wife; and (5) he did not follow the laws of the State of New Hampshire, but he followed the laws of God. The defendant then confirmed all aspects of the seven-year-old victim's account of events for March 3, 2001, except for the allegations that he improperly touched her genitalia, which he consistently and adamantly denied.

Prior to trial, the defendant moved to exclude all of these statements. The trial court, however, found the State made a plausible showing at the motion hearing that the probative value of the statements outweighed any prejudicial effect they would have upon the defendant. The trial court then denied the defendant's motion, but permitted him to renew his objection during trial. The defendant, however, did not object to the statements at trial.

The defendant also moved, prior to trial, to exclude Detective Brown's opinion testimony supporting the credibility of the minor victim. The trial court granted this request. The defendant then moved to exclude testimony from Detective Brown about both the victim's and the defendant's credibility. Specifically, the defendant sought to exclude the detective's statements that the defendant "should just be honest with [the detective] about what had happened" after the detective had already heard his denials of the victim's allegations. The trial court denied this request.

On appeal, the defendant challenges the trial court's denial of his motions *in limine* to exclude the statements and testimony at trial. Because both issues deal with the admissibility of evidence, we review the trial court's rulings only to decide if the trial court committed an unsustainable exercise of discretion. *See State v. Jordan*, 148 N.H. 115, 117 (2002). To prevail on appeal, the defendant must show the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

The defendant asserts that the trial court erred by admitting his statements to Detective Brown because they were irrelevant and unfairly prejudicial to his defense. We disagree.

Relevant evidence is not unfairly prejudicial if it merely causes detriment to a defendant because it tends to prove his guilt. *See Jordan*, 148 N.H. at 117-18. Otherwise, all of the State's evidence would be considered unfairly prejudicial to the defendant. *See id.* at 118. The prejudice required to prove reversible error is an undue tendency to induce a decision against the defendant on some improper basis, such as evidence of issues that are emotionally charged. *See id.*

At trial, the State argued that all of the defendant's statements to the police constituted admissions, and were relevant to prove the defendant's state of mind and consciousness of guilt. The defendant argued that the statements were unfairly prejudicial because a jury might find them to be unpatriotic or contemptuous of the legal system, or the jury might base its verdict upon an improper religious bias. The trial court ruled that the State's proffered reasons established sufficient probative value for the statements to withstand any claimed prejudice by the defendant, while cautioning that the statements would be subject to the defendant's renewed objection at trial. The trial court made no further order on the issue and the defendant made no further objection at trial.

We find that, while these challenged statements could give rise to many different inferences at trial, no possible inference from these statements rises to the level of unfair prejudice required to substantially outweigh their probative value. *Cf. State v. Pelkey*, 145 N.H. 133, 136 (2000) (finding defendant's statements to be prejudicial).

■ The only disputed issue in this case was whether the defendant improperly touched the victim. The victim testified that he did, making the defendant's statements to the contrary or his reasons for not making statements to the contrary extremely probative of his consciousness of guilt. On the other hand, none of these statements has the purpose or effect of appealing to a jury's sympathies, arousing its sense of horror, provoking its instinct to punish, or triggering other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *Id.* The statements do not admit any wrongdoing, disclose any prior bad acts or address any emotionally charged issues, such as child abuse, that would make a jury more likely to find the defendant guilty of sexually molesting the victim. *See id.* Accordingly, we hold that the trial court's admission of these statements was a sustainable exercise of discretion.

■ The defendant next argues the trial court erred by allowing Detective Brown to testify about his comment that the defendant should "be honest with him about what happened" and about the defendant's religious comments. The defendant argues this testimony constitutes improper opinion evidence on the defendant's and the victim's credibility. The defendant argues that these statements portray him as a liar and as being guilty to God, while they portray the victim's complaints as being credible.

Upon reviewing Detective Brown's trial testimony, we conclude that it amounts to nothing more than a detailed factual narration of his interview with the defendant. *See State v. Kulas*, 145 N.H. 246, 248-49 (2000). Detective Brown testified to the questions he asked the defendant and the defendant's responses thereto. The detective did not comment upon the credibility of either the victim or the defendant. *Cf. State v. Reynolds*, 136 N.H. 325, 327 (1992). Nor did he comment upon the ultimate issue of whether the improper touching occurred, thereby making one witness more or less credible than the other. *Cf. State v. Lemieux*, 136 N.H. 329, 331 (1992). The detective's challenged testimony was made in response only to the defendant's unsolicited rambling, and, at most, the jury could find that the testimony as a whole corroborated the victim's testimony, which is no reason to exclude it. *See State v. Walsh*, 139 N.H. 435, 437 (1995). We find, therefore, the trial court's admission of the detective's testimony was also a sustainable exercise of discretion.

All issues raised in the notice of appeal, but not briefed, are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.