Belknap
No. 2003-614

THE STATE OF NEW HAMPSHIRE

v.

DOUGLAS AINSWORTH

Argued: November 9, 2004
Opinion Issued: February 4, 2005

*Kelly A. Ayotte*, attorney general (*Jonathan V. Gallo*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

GALWAY, J. The defendant, Douglas Ainsworth, was convicted after a jury trial in the Superior Court (*Perkins*, J.) on two counts of attempted murder, *see* RSA 629:1 (Supp 2004); RSA ch. 630 (1996); one count of reckless conduct, *see* RSA 631:3 (1996); and one count of attempted first-degree assault, *see* RSA 629:1 (Supp. 2004); RSA 631:1 (1996). We affirm.

The record supports the following facts. In September 2002, the defendant drove to the home of his former wife, Kerrell Betourne, and fired a shotgun at her through her window. He then drove to his mother's home, where he fired at Officers Jeff Buskey and William Wright. He was indicted on five charges: attempted murder of Officer Buskey; attempted murder of Officer Wright; attempted murder of Ms. Betourne; attempted first-degree assault of Ms. Betourne; and reckless conduct against Officer Buskey.

Prior to trial, the defendant filed a notice of self-defense in which he stated "that he may rely on the defense of physical force to defend [him]self against Officer Jeff Buskey . . . and Officer William Wright." The court found the defendant's notice to be inadequate, but allowed the defendant to supplement it. The trial judge's instructions to the jury did not include an instruction on self-defense. Defense counsel did not object, and in fact responded affirmatively that the instructions were proper.

Also, prior to trial, the defendant filed a motion for discovery requesting personnel records of both Officers Buskey and Wright. The defendant requested that the State "conduct a good faith review of the files and notify the court of its findings," and alleged that information contained in them might have some bearing on his defense of self-defense. The court denied the motion upon the basis that it "[did] not find that probable cause exist[ed] to produce the personnel records of the officers involved."

During the trial, the State was allowed, over the defendant's objection, to introduce into evidence the tape of Betourne's 9-1-1 call from the night of the shooting.

In her closing argument, defense counsel argued that portions of the testimony of the defendant's children amounted to "gratuitous cruelty" to the defendant. In response, the State argued: "At the outset of this case, the defense attorney told you that she cares about the defendant . . . I'm asking you to care about these people who were targets. I'm asking you to care about three terrified children . . . ." Defense counsel objected and requested a curative instruction or a mistrial. Both requests were denied.

On appeal, the defendant argues that the trial court erred in: (1) failing to give a jury instruction on self-defense; (2) denying him access to the officers' personnel files; (3) finding that the tape of the 9-1-1 call was not more prejudicial than probative; and (4) denying his motion for a mistrial. We address each argument in turn.

*I. Jury Instruction*

The defendant first argues that the trial court should have given a jury instruction on self-defense. The State contends that the defendant failed to timely object to the court's jury instructions, and thus has not preserved the issue for appellate review. We agree.

A contemporaneous objection is necessary to preserve a jury instruction issue for appellate review. *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 457 (2003). This requirement affords the trial court an opportunity to correct an error it may have made and is

particularly appropriate where an alleged error involves a jury instruction. *Id.* This long-standing requirement is grounded in common sense and judicial economy, and applies equally to civil and criminal matters. *Id.*

Because the defendant did not contemporaneously object to the jury instructions before the trial court, but rather indicated satisfaction therewith, the court had neither an opportunity to rule in a timely fashion on the issue nor a timely opportunity to correct any error; accordingly, the issue is not preserved for our review. *See Transmedia Restaurant Co.*, 149 N.H. at 457.

## II. Personnel Files

Next, the defendant argues that the denial of his discovery motion was an unsustainable exercise of discretion because it "den[ied] him both the right to cross-examine and the right to put on all proofs favorable," citing Part I, Article 15 of the New Hampshire Constitution. The State responds that the defendant failed to make a sufficient showing of probable cause under RSA 105:13-b (2001). We agree.

RSA 105:13-b provides in pertinent part:

> No personnel file on a police officer who is serving as a witness ... in a criminal case shall be opened for the purposes of that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination whether it contains evidence relevant to the criminal case.

We review the trial court's decisions on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. *State v. Amirault*, 149 N.H. 541, 543 (2003). To meet this standard, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *Id.*

In order to trigger *in camera* review of the officers' personnel files, the defendant must establish a reasonable probability that the files contain information that is material and relevant to his defense. *State v. Gagne*, 136 N.H. 101, 105 (1992); *see Amirault*, 149 N.H. at 544. It is the defendant's burden to establish that there is a realistic and substantial

likelihood that evidence helpful to his defense would be obtained from the officers' personnel files. *State v. Gaffney*, 147 N.H. 550, 556-57 (2002). To meet this threshold requirement, the defendant must present a plausible theory of relevance and materiality sufficient to justify review of otherwise protected documents. *Amirault*, 149 N.H. at 544.

Although this standard for *in camera* review is not unduly high, we conclude that the defendant's representation falls short of meeting it. By representing only that the information contained in the files might have some bearing on his defense of self-defense, the defendant failed to establish a reasonable probability that the records contained information that was material and relevant to his defense. *See Gagne*, 136 N.H. at 105. Thus, he did not meet his burden of establishing that there was a realistic and substantial likelihood that evidence helpful to his defense would be obtained from the officers' personnel files, *see Gaffney*, 147 N.H. at 556-57, and did not present a plausible theory of relevance and materiality sufficient to justify review of otherwise protected documents. *See Amirault*, 149 N.H. at 544. Thus, the defendant did not demonstrate that the trial court's ruling was untenable or unreasonable to the prejudice of his case. *See id.*

We conclude that the trial court's determination that no probable cause existed to produce the personnel files of Officers Buskey and Wright is sustainable. *See Amirault*, 149 N.H. at 543; *see also* RSA 105:13-b. Accordingly, we conclude that the defendant has failed to demonstrate that he was denied either the right to cross-examine based upon the inadmissible records, or to put on all proofs favorable. *But cf. State v. Graf*, 143 N.H. 294, 296 (1999) (right to produce all favorable proofs gives defendant only the right to produce witnesses).

*III. 9-1-1 Tape*

We now consider whether the trial court erred in admitting Ms. Betourne's 9-1-1 call into evidence. The defendant contends that the 9-1-1 tape should have been excluded because he admitted that he shot out the window, arguing that he did so while suffering from the combined effects of alcohol and Amitriptylene. He contends that "nothing in the tape addresse[d] the issue of [his] ability to form the intent required by the statute he is accused of violating." Thus, the defendant concludes, "playing the tape can only have served to 'inflame the passions of the jury' with sympathy for Ms. Betourne," leading jurors to decide the case against him on the basis of "unfairly prejudicial feelings."

The State responds that although Ms. Betourne was present to testify as to the incident involving the defendant, the tape "represented a contemporaneous account of the events as they occurred and therefore the best evidence of the incident." Thus, the State argues that the danger of unfair prejudice, if any, did not substantially outweigh the probative value of this evidence. *See* N.H. R. Ev. 403. We agree.

New Hampshire Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We accord the trial court considerable deference in determining whether probative value is substantially outweighed by the danger of unfair prejudice, and we will not disturb its decision absent an unsustainable exercise of discretion. *State v. Jordan*, 148 N.H. 115, 117 (2002). To show that the trial court exercised unsustainable discretion, the defendant must show that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. *Id.*

The record supports the trial court's admission of the 9-1-1 tape. The trial court found the tape to be relevant, probative, and not substantially more prejudicial than probative. The 9-1-1 tape is as contemporaneous as possible an account of the events as they occurred. Moreover, the probative value of the tape is strengthened given that in order to find the defendant guilty of the charge of attempted murder of Ms. Betourne, the jury had to find that he attempted to purposely cause her death. *See* RSA 629:1. Relative to this charge, the trial judge gave the following jury instructions, in pertinent part:

> In deciding whether a person is guilty of a crime, you as a jury have to know both what a person's actions were and what that person's intentions were . . . . So for a person to be guilty of a crime, that person must have done two things. That person must have mentally intended to do something that's criminal, and that person must have physically acted to do something that is criminal. And unless a person both intends and acts to do something criminal, that person has not committed a crime.

The defendant testified that he "grabbed [his] rifle, and [he] shot a hole in the window." Because the defendant admitted to shooting through the window of Ms. Betourne's home, the 9-1-1 tape's probative value regarding the defendant's physical actions was minimal. The inquiry as to the tape's probative value does not end here, however, because the State was required to prove that the defendant acted purposely when he fired at Ms. Betourne. The prosecution, with its burden of establishing guilt beyond a reasonable doubt, has the right to prove every essential element of the crime by the most convincing evidence it is able to produce. *Jordan,* 148 N.H. at 118.

During the 9-1-1 call, Ms. Betourne told the dispatcher: "[W]hen I walked in the living room, the gunshot went threw [*sic*] the window." She also stated:

> I just told him to leave because he kept on harassing me and calling me ... the last two days ... and I hoped he would just leave me alone. ... I told him to ... leave because he's supposed to give me 24 hours notice .... He showed up this week and I threw him out and he showed up again. ... He walked in on me on Sunday and I was getting dressed and I told him to leave. ... And then yesterday he ... started calling ... and showed up and I told him to leave.

This recording supports the jury's inference that the defendant intended to kill her.

■ Having reviewed the contents of the tape, we conclude that the tape's probative value is not substantially outweighed by the danger of unfair prejudice. *See State v. Cochran,* 132 N.H. 670, 673 (1990) (reasoning that where contested evidence carries no particular emotional charge, questions of credibility and reliability fall within jury's province). Although Ms. Betourne was upset and afraid during the incident, the tape is not so unduly emotional as to inflame a jury. *See Jordan,* 148 N.H. at 118. We conclude, therefore, that the trial court did not commit an unsustainable exercise of discretion in admitting the tape at trial. *See State v. Morrill,* 151 N.H. 331, 333 (2004) (stating trial court is in best position to gauge prejudicial impact of particular testimony); *see also State v. Wood,* 150 N.H. 233, 235 (2003) (stating trial court is in best position to gauge any prejudicial effect of prosecutor's closing remarks on jury).

*IV. Motion for a Mistrial*

■ Finally, we address the defendant's argument that he was entitled to a mistrial because the State's closing argument, which referenced "three terrified children," was improper. When reviewing a trial court's ruling on a motion for a mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate. *State v. Kerwin*, 144 N.H. 357, 359 (1999). We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion. *State v. Pandolfi*, 145 N.H. 508, 512 (2000); *cf. Lambert*, 147 N.H. at 296.

To support his argument, the defendant first cites *State v. Ellsworth*, in which we reversed a conviction based upon an improper comment by the prosecutor as to the defendant's failure to testify. *State v. Ellsworth*, 151 N.H. 152, 158 (2004). In *Ellsworth*, the court found that the prosecutor's comment was deliberate, the lingering prejudice could have affected the outcome, and the ensuing curative instruction was not enough. *Id.* Next, the defendant cites *Walton v. City of Manchester*, 140 N.H. 403 (1995). In *Walton*, we required a new trial because we concluded that the argument made by the city's attorney was: (1) calculated to encourage the jury to make a decision based upon personal interest and bias: (2) prejudicial; and (3) not based on evidence. *Id.* at 408.

Here, the defendant contends that because the State's comments were not inadvertent, and because there was no curative jury instruction, a mistrial should have been granted. The defendant argues further that the "three terrified children" referenced by the State were not parties to the action, and that "[f]ollowing the reasoning of *Walton*, the prosecutor's overt invitation to the jury to consider them in their deliberations can be nothing but an appeal to deliver a verdict based on sympathy and not on the facts of the case."

■ We are not persuaded by the defendant's arguments. Unlike the comments made by the city's attorney in *Walton*, which were unsupported by evidence and intended to appeal to personal sympathies of the jury, the prosecutor's comments here were a permissible response to defense counsel's closing argument. *See State v. Laurent*, 144 N.H. 517, 520 (1999) (holding State's comments permissible as rebuttal to inferences created by defendant). Defense counsel specifically referenced the defendant's children and parts of their testimony, which she called "gratuitous cruelty." The responding comments by the State were supported by

testimony of Ms. Betourne and the defendant's children, who testified that they were in fear after the defendant shot into the house. Moreover, the jury was instructed to arrive at a verdict on "the facts of this case and ... without prejudice ... and without any sympathy at all." *See State v. Smith*, 149 N.H. 693, 697 (2003) (stating juries are presumed to follow the instructions of the court). We uphold, therefore, the trial court's decision that neither an immediate curative instruction nor a declaration of a mistrial was necessary, and conclude that the trial court's denial of the defendant's motion was not an unsustainable exercise of discretion. *See State v. Hall*, 148 N.H. 671, 675 (2002).

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.