**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0097, <u>State of New Hampshire v. Anthony Collins</u>, the court on March 1, 2018, issued the following order:**

Having considered the brief filed by the defendant, Anthony Collins, the State's memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant appeals his conviction for first degree assault, following a jury trial in Superior Court (<u>Kissinger</u>, J.). <u>See</u> RSA 631:1, I(b) (2016). On appeal, he argues that the trial court unsustainably exercised its discretion when it admitted into evidence color photographs depicting the victim's injuries. He also argues that the trial court committed plain error when it failed to strike, <u>sua</u> <u>sponte</u>, certain testimony by the victim. <u>See</u> <u>Sup. Ct. R.</u> 16-A. We affirm.

I. <u>Admissibility of the Photographs</u>

The defendant was charged with having committed first degree assault when he "knowingly caused bodily injury" to the victim "by means of a deadly weapon, when he stabbed [the victim] in the hand and cut [the victim's] face with a knife." <u>See</u> RSA 631:1, I(b). The indictment further alleged that the knife was a deadly weapon because "the manner in which it was used is known to be capable of producing death or serious bodily injury." <u>See</u> <u>State v. Hatt</u>, 144 N.H. 246, 248 (1999).

During the State's direct examination of the victim, the State sought to introduce color photographs depicting the victim's injuries. Defense counsel objected, arguing that the photographs were inadmissible under New Hampshire Rule of Evidence 403. <u>See</u> <u>N.H. R. Ev.</u> 403 (2016) (amended 2017). The trial court overruled the objection and allowed the photographs to be admitted into evidence.

On appeal, the defendant argues that the trial court misapplied Rule 403. Under Rule 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." <u>Id</u>. Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. <u>State v. Ainsworth</u>, 151 N.H. 691, 696 (2005). However, "[u]nfair prejudice is

not . . . mere detriment to a defendant from the tendency of the evidence to prove his guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." State v. Jordon, 148 N.H. 115, 117-18 (2002) (quotation omitted). "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id. at 118 (quotation omitted).

Because the trial court is in the best position to gauge the prejudicial impact of particular evidence, see State v. Tabaldi, 165 N.H. 306, 323 (2013), we accord the trial court considerable deference in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, Ainsworth, 151 N.H. at 696. We will not disturb its decision absent an unsustainable exercise of discretion. Id. To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

The trial court reasonably determined that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to the defendant. See Tabaldi, 165 N.H. at 323. The photographs "were relevant as bearing on the nature and the degree of the crime and the defendant's purpose and mental state, as well as an aid in making clear to the jury oral descriptions of the [victim's] injuries." State v. White, 105 N.H. 159, 162 (1963). The photographs were also probative of whether the knife was used as a deadly weapon. See Hatt, 144 N.H. at 248 (explaining that a weapon is deadly if it may be objectively understood to be capable of causing death or serious bodily injury in the manner in which it is used, intended to be used or threatened to be used).

In the context of this case, we cannot say that the photographs were likely to have any greater emotional impact on the jury than the victim's testimony describing his injuries. See Tabaldi, 165 N.H. at 323. Although the photographs "may have been prejudicial, we cannot conclude that [they were] so inflammatory as to substantially outweigh [their] probative value." Id. (quotation omitted).

II. Plain Error

During the State's direct examination of the victim, the prosecutor asked him how he felt waiting for the fire department to arrive after the stabbing, and the victim responded:

> Oh, what did it feel like waiting? Complete panic. You know, having a wife who is pregnant with your daughter and not knowing. You know, I hadn't seen my face. I didn't know the severity of the injuries. And all I could think about was my wife

2

and my unborn daughter and my son. I mean it was torture. I didn't know if whoever this was was going to come back and do it again. Just shock and terror and fear.

Shortly thereafter, the prosecutor asked the victim to explain his prior testimony that one of the long-term effects of the stabbing had been "emotional," and the victim responded:

It's been the worst 14 months of my life. I've had to deal with this with no closure, you know. I feel like I'm always having to look behind my shoulder because I had — I didn't have any idea who it was that did it and if it was going to happen again. It's just — it's been a nightmare, you know. My family's been looking at moving to try to escape it. I don't know how else to describe it, other than just a nightmare.

The defendant did not object to the admission of this testimony. On appeal, he argues that the admission constituted plain error. See Sup. Ct. R. 16-A.

"For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." State v. Thomas, 168 N.H. 589, 604 (2016) (quotation omitted). "If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). "The plain error rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result." Id. (quotation omitted).

"Because the defendant did not object to the challenged testimony, and the trial court made no ruling on its admissibility, the pertinent question is whether the trial court erred in failing sua sponte to strike that testimony." Id. (quotation omitted). "We have never held that a trial court must sua sponte strike a witness's testimony." Id. (quotation omitted). "A trial court might have that obligation when there could be no dispute that certain testimony impaired the defendant's substantial rights and adversely affected the fairness, integrity, or public reputation of judicial proceedings"; however, "this case . . . does not present such a situation." Id. (quotation omitted).

"Even if we were to assume that there was error and that it was plain, the error must affect substantial rights." Id. at 606. This third prong of the plain error test "is similar to the harmless error analysis we use to evaluate preserved claims of error, with one important distinction: whereas the State bears the burden under harmless error analysis, the defendant bears the burden under the plain error test." State v. Mueller, 166 N.H. 65, 70 (2014). "To meet this third prong, the defendant must demonstrate that the error was

3

prejudicial, i.e., that it affected the outcome of the proceeding." Thomas, 168 N.H. at 606 (quotation omitted). "We will find prejudice under the third prong when we cannot confidently state that the jury would have returned the same verdict in the absence of the error." Id. (quotation omitted).

The defendant has failed to demonstrate that admission of the challenged testimony, even if erroneous, affected the outcome of the proceeding. The challenged testimony was merely cumulative of testimony to which the defendant did not object at trial and that he does not challenge on appeal. For instance, in response to the prosecutor's question about why the victim tried to contact his wife after he was stabbed, the victim testified: "My wife was pregnant with my now nine month old daughter and it was all I could think of because I didn't know — you know, I was in shock. I didn't know the severity of the injuries. I was terrified." The victim also testified that, when he first saw the assailant walking towards him "at an extremely brisk pace with his hand up with a knife in his hand," he first felt confused "[a]nd then sheer terror." Additionally, in response to the prosecutor's question about "the long-term physical effects" of the stabbing, the victim testified that "[e]motional stress has been the worst part of it."

The challenged testimony was inconsequential in relation to the evidence of the defendant's guilt, which was overwhelming. The victim was the manager of a store in Manchester and, while he was working behind the cash register, he was stabbed by an assailant wearing a white sweatshirt and a black ski mask. Another store employee saw that the assailant had a backpack. A customer observed the attack and saw the assailant run from the store. The customer gave chase. He saw the assailant pull off his mask and throw something. The customer never lost sight of the assailant. The assailant ran into the woods and, then, waded into nearby water.

When police arrived on the scene, they observed that the assailant was wearing a white sweatshirt and had a backpack. The police yelled to the assailant to come out of the woods and show his hands. Eventually, the assailant dropped his backpack and went up a hill toward the police where the police grabbed him, put him on the ground, and subdued him with a "Taser." The assailant, later identified as the defendant, was arrested. The customer testified that the man whom the police arrested was "absolutely" the same man who had assaulted the victim. A black ski mask was found on the trail to the woods, and a backpack was found near the water. The mask and backpack were approximately 100 feet apart. Inside the backpack was a cardboard "wrapper" for "a Royal Norfolk three-inch paring knife." The knife used in the assault was never recovered.

Given the record before us, we are confident that the jury would have returned the same verdict even if it had not heard the challenged testimony.

4

See id.  Accordingly, we conclude that the defendant has failed to demonstrate that the trial court committed plain error.

Affirmed.

Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,
Clerk**
